## CITY OF ATLANTA *et al. v.* GEORGIA RAILWAY & POWER COMPANY *et al.*

1. The railroad commission of this State has statutory power to prescribe schedules of "just and reasonable rates" of charges for services by electric-light and power companies.

2. The provisions of the Civil Code, § 2662, which restrict the power of the railroad commission in regard to contracts existing at the time of the passage of the act embodied in that section, and contracts which might be made subsequently to that act, apply alike to all of the several classes of companies specified in the act.

3. That part of the proviso of the act just mentioned which declares "that this act shall not . . impair nor invalidate any future contract or ordinance of any municipality, as to the public uses of such company, that shall receive the assent of the railroad commission," does not deprive the railroad commission of power, after assenting to a contract or ordinance of the character mentioned in such provision, made after the passage of the act, to revise or make new rates, where future conditions render the rates specified in the contract or ordinance unreasonable and unjust to the companies or to the public.

4. The statutes creating the railroad commission of Georgia and giving it power over public-service corporations do not require the railroad commission to afford a hearing before it in the exercise of its function to make schedules of rates to be applied in the future. And where, in the formation of rates, the railroad commission considers a document on file in its office as to the value of the property of a company for which rates are to be prescribed, without formally introducing such document in evidence at a hearing which has been held, the fact that such document is so considered will not be sufficient ground to authorize the courts to set aside as void the order of the railroad commission prescribing rates.

5. Under the statutes providing for the production of papers in court by a party to a case after written notice by his adversary, the court may decline to require the railroad commission to produce, in response to such notice, original papers of file in the office of the railroad commission.

6. Under the pleadings and the evidence, there was no error in refusing the injunction.

No. 1192. SEPTEMBER 27, 1919.

Petition for injunction. Before Judge Littlejohn. Fulton superior court. September 27, 1918.

*J. L. Mayson, S. D. Hewlett, R. R. Arnold, C. E. Cotterill,* and *E. E. Pomeroy,* for plaintiffs.

*Rosser, Slaton, Phillips & Hopkins, King & Spalding, Colquitt & Conyers, C. T., L. C. & J. L. Hopkins,* and *James K. Hines,* for defendants.

ATKINSON, J. The railroad commission of Georgia passed an order allowing an increase of rates to be charged by the Georgia

Railway and Power Company for electric service rendered to its customers. The increase allowed over the old rates for residential lighting was 12 3/5 %; for retail power 20 %; and for wholesale power 25 %. After the order was promulgated, a suit was instituted in the superior court by the City of Atlanta and certain customers of the Georgia Railway and Power Company, seeking to set up an alleged contract between the city and the company, fixing rates less than those specified in the order; to declare the order null and void; and enjoin the company from putting it into effect. An interlocutory injunction was denied, and the plaintiffs excepted.

1: The Civil Code, § 2631 (Ga. Laws 1878-79, p. 127), provides: "The railroad commissioners are required to make for each of the railroad corporations doing business in this State, as soon as practicable, a schedule of just and reasonable rates of charges, . . and said commissioners shall, from time to time and as often as the circumstances may require, change and revise such schedules." Sections 2630, 2626, and 2662, codified from section 5 of the act of 1907 (Ga. Laws 1907, p. 72), amending the act of 1879, supra, declare: "The power to determine what are just and reasonable rates and charges is vested exclusively in said commission. The printed reports of the railroad commission, published by its authority, shall be admissible as evidence in any court in Georgia, without further proof, and the schedules of rates made by the commission and any order passed or rule or regulation prescribed by the commission shall be admissible in evidence in any court in Georgia upon the certificate of the secretary of the commission. The powers and duties heretofore conferred by law upon the railroad commission are hereby extended and enlarged, so that its authority and control shall extend to street-railroads and street-railroad corporations, companies or persons owning, leasing, or operating street railroads in this State; provided, however, that nothing herein shall be construed to impair any valid, subsisting contract now in existence between any municipality and any such company, and provided that this section shall not operate as a repeal of any existing municipal ordinance; nor shall it impair nor invalidate any future contract or ordinance of any municipality, as to the public uses of such company, that shall receive the assent of the railroad commission; over docks and wharves and corporations, companies or persons owning, leasing, or operating the same; over terminals or

terminal stations and corporations, companies or persons owning, leasing, or operating such; cotton-compress corporations or associations, and persons or companies owning, leasing, or operating the same; and over telegraph or telephone corporations, companies or persons owning, leasing, or operating a public telephone service or telephone lines in this State; over gas and electric-light and power companies corporations or persons owning, leasing, or operating public gas plants or electric-light and power plants furnishing service to the public." It thus appears that the legislature conferred on the railroad commissioners the power to make schedules of "just and reasonable rates of charges" for service by electric light and power companies. *City of Atlanta* v. *Atlanta Gas-Light Co.,* ante, 405.

2. As just noted, the Civil Code, § 2662, contains the following: "provided, however, that nothing herein shall be construed to impair any valid, subsisting contract now in existence between any municipality and any such company; and provided that this section shall not operate as a repeal of any existing municipal ordinance; nor shall it impair nor invalidate any future contract or ordinance of any municipality, as to the public uses of such company, that shall receive the assent of the railroad commission." It is urged that the provisos quoted above refer only to street-railroad companies, and do not affect the power of the railroad commission in regard to fixing rates for the other enumerated kinds of companies. The language quoted is a proviso in the middle of the section, which renders that part of the section awkwardly expressed. Its meaning would be more apparent if the language quoted were transposed from the middle to the end of the section in which it is contained. In construing the law the context must be considered, and the better view is that the provisos apply alike to all the specified kinds of companies. There is no reason why they should apply to street-railroad companies, and not to companies engaged in the other classes of business.

3. Another contention was that the proviso, "that this act shall not . . impair nor invalidate any future contract or ordinance of any municipality, as to the public uses of such company, that shall receive the assent of the railroad commission," protected an ordinance subsequently (in 1912) passed by the City of Atlanta

and agreed to by the electric-light and power company, which was alleged to have received the assent of the railroad commission, such ordinance and contract providing a lower rate than that specified in the order of the railroad commission which was under attack. Assuming, without deciding, that the words "public uses," as employed in this part of the statute, comprehend rates that the company might charge the public, and likewise assuming, without deciding, that certain stipulated rates when assented to by the railroad commission were contemplated, the statute properly construed leaves it to the municipalities by contract or ordinance to specify rates, not unconditionally, but subject to the assent of the railroad commission. The annexing of such condition amounts to affirmation rather than denial of the power of the railroad commissioners to say what rates might be stipulated by contract or specified by ordinance, which after all would amount to the commission making rates. The rates which might be so fixed would be subject to the continued approval of the railroad commission and authority to revise them. If it were otherwise, the commission, by assenting to rates reasonable at one time under existing conditions, would be stripped of the power to revise them at other times, however unreasonable they might become under changed conditions. No such result was intended. This view makes the proviso harmonize with that part of the Civil Code, § 2631, which provides, "said commissioners shall, from time to time and as often as the circumstances may require, change and revise such schedules." Under this construction any rates fixed by contract or ordinance, assented to by the railroad commission in 1912, would not prevent the commissioners from prescribing just and reasonable rates under conditions existing in 1918.

4. It appeared that the railroad commission, before passing the order complained of, had a public hearing on the application of the power company to increase its rates for electric light and power, and among other things granted to the applicant, and also to the city and various customers who were protesting the application, the right to be heard and to offer evidence. The hearing consumed many days, and the evidence took a broad range. Several years previously an engineer had made a report as to the value of certain property then and now employed by the power company, which was on file and included among the records of the railroad commission.

An expert employed by the protestants was given permission and opportunity to investigate the files of the railroad commission, and was aware of this report.  This report was not formally introduced at the hearing before the railroad commission, but after the hearing it was called for and taken into consideration by the commission in determining what rate the company should be allowed to charge. It is contended that the order of the railroad commission, fixing the rate which the company might charge for electric light and power, was void, because the railroad commission took this report into consideration in prescribing the schedules of rates which they finally made.   Under the ruling in *Wadley Southern Ry. Co.* v. *State,* 137 *Ga.* 497 (73 S. E. 741), if the railroad commission had been engaged in the determination of a judicial question, affecting an existing right of some person, that person would have been entitled by constitutional guaranty to a hearing.  The right to a hearing would carry with it the right to object to the admissibility of the evidence, and the right to meet it by other evidence.  The case cited was where the railroad commission of Georgia, under its statutory powers, was conducting a quasi judicial inquiry based upon a complaint made against certain railroad companies, charging an unlawful discrimination.  It was held, that the railroad commission was vested with power to determine what would be an unlawful discrimination, and that "Section 6 of the railroad commission act of 1907 (Civil Code (1910), § 2663) contemplates that notice and an opportunity of a hearing be given to persons, railroads, or other corporations interested in the orders issued by the commission, and that provision may be made for such notice either by statute or rule of the commission.  This section is to be construed to mean that the commission shall not issue a special order in a particular case, directed to a person or corporation, without first giving notice and an opportunity for hearing to the person or corporation so to be affected thereby."  Whether a hearing should be afforded by the railroad commission on a quasi legislative question, or a question that was not quasi judicial, was not before the court, and the decision did not purport to deal with such a question.  In *Carr* v. *Augusta,* 124 *Ga.* 116 (52 S. E. 300), in discussing the difference between a quasi legislative and quasi judicial question, it was said:  "The duties of a municipal council are varied.  Some are merely ministerial, some are legislative, some are executive;

but there are still others which are judicial in their nature, and the determination of where the legislative or ministerial duty ends and where the judicial duty begins is often attended with extreme difficulty. Harris on Certiorari, § 48. Where the duty is purely ministerial, or purely legislative, the error can not be corrected by certiorari. But where the duty imposed upon the municipal council clearly requires the exercise of judicial powers, or even the exercise of quasi-judicial powers, the general rule is that an error committed may be reviewed on certiorari. 1 Smith on Mun. Corp. § 561. When a municipal council passes an ordinance it acts in its legislative capacity, and certiorari will not lie. But when, after having passed an ordinance, it proceeds to enforce the same, according to its terms, against one who has become liable to a penalty provided by the ordinance, in the determination of whether such person has violated it, and has thereby become subject to be proceeded against under its provisions, a municipal council is exercising a judicial power of the same nature that any court would exercise in investigating whether a given person has violated a given law. The action of the council, no matter by what name it might be called, order, resolution, or otherwise, which declares that a person has laid himself liable to penalties prescribed in the ordinance, is a judgment of the council, which can only be reached by the exercise of judicial functions, that is an application of the law as laid down in the ordinance to the facts that appear before the council at the time the resolution was passed. The ordinance in effect imposed a penalty upon one holding a license to sell liquor when he did any one or more of the acts referred to in the ordinance. The ordinance devolved upon the council the determination of the question of fact as to whether he had been guilty of the acts declared illegal. Without reference to whether the ordinance was invalid for not providing notice to the party proceeded against for a forfeiture of his license, the act of the council declaring the person proceeded against guilty of a violation of the ordinance was in its very nature a judicial act. See Black on Intoxicating Liquors, § 195."

The doctrine here announced was approved and applied in *Daniels* v. *Commissioners of Pilotage,* 147 *Ga.* 295 (93 S. E. 887), holding that the commissioners of pilotage, in declining to authorize licensed pilots upon the bar of Tybee and river of

Savannah to operate a boat separate and independent from the pilot boat to which, under the rules of the commissioners, all pilots are required to be attached, were not exercising a judicial function. In that case the commissioners took under consideration certain letters and reports obtained from other boards which were material, but were not formally introduced as evidence before the commissioners. In *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 145 *Ga.* 658 (89 S. E. 779), it was held: "An order of the railroad commission, fixing a schedule of rates to be charged by public-service companies in a given municipality, is not invalid solely because a contract-holder of one of the public-service companies was not made a party and notified of the proceedings before the commission." The soundness of this decision rests upon the proposition that on the question of making rates for future application the railroad commission was not bound to afford a hearing, because the act of the commission in fixing such rates was quasi legislative; and if prescribed rates are unreasonable or void for any reason, there is a remedy by resort to the courts, as held in *Union Dry Goods Co.* v. *Georgia Public Service Corporation,* 142 *Ga.* 841 (83 S. E. 946), s. c. 248 U. S. 372 (39 Sup. Ct. 117, 63 L. ed.). The railroad commission of Georgia may afford a hearing on such questions, by rule or otherwise, as a matter of discretion. Such hearings are permitted but not required. On investigation of an order prescribing rates in the courts, the order is presumptively reasonable and just; but the complaining party will be permitted to submit any evidence tending to show the order unreasonable or unjust, or otherwise illegal, without restriction on account of the action of the railroad commission in passing the order. See *City of Atlanta* v. *Atlanta Gas-Light Co.,* supra. Under the circumstances it would not be obligatory to afford, to a person to be affected by a schedule of rates applicable in the future, a hearing before the railroad commission on the question of making such rates. It is recognized generally that in prescribing rates for future application a rate-making body does so in the exercise of quasi legislative functions. Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362 (14 Sup. Ct. 1047, 38 L. ed. 1014), Knoxville v. Water Co., 212 U. S. 1, 8 (29 Sup. Ct. 148, 53 L. ed. 371) ; Louisville & Nashville R. Co. v. Garrett, 231 U. S. 298, 305, 307 (34

Sup. Ct. 48, 58 L. ed. 229). For the reasons indicated, the fact that the railroad commission may have acted in part upon information not formally introduced in evidence before it, would not render void its order fixing a schedule of rates to þe applied in the future. The plaintiffs in error rely, among others, upon the rulings in Interstate Commerce Commission *v.* Louisville & Nashville R. Co., 227 U. S. 88 (33 Sup. Ct. 185, 57 L. ed. 431), and Interstate Commerce Commission *v.* Union Pacific Railroad Co., 222 U. S. 541 (32 Sup. Ct. 108, 56 L. ed. 308). Both of those cases had reference to the powers of the interstate-commerce commission, and related to the action of the commission while exercising its quasi judicial functions under section fifteen of the Hepburn amendment to the interstate-commerce commission act (34 Stat. 584, c. 3591, § 15), which required them to afford a hearing. The reasoning employed in those cases is inapplicable to the present case, where the power of the State railroad commission was under a different statute that authorized the railroad commission, in the exercise of a quasi legislative function, to prescribe rates applicable in the future, and did not require them to afford a hearing, and where the order of the railroad commission under attack was passed in the exercise of a quasi legislative function.

5. In the suit of the City of Atlanta et al. against the Railroad Commission of Georgia, the Georgia Railway and Power Company, and the Georgia Railway and Electric Company, to enjoin the order of the railroad commission referred to in the preceding division, the plaintiffs served the railroad commission with notice to produce "the following papers and documents to be used as evidence for the plaintiffs:" "(*a*) all reports, returns, or schedules made by the Georgia Railway and Power Company or under its authority or by any of its officers or agents for it, and whether under oath or not, in the years 1911, 1912, 1913, 1914, 1915, 1916, 1917, and 1918, showing for any periods the net earnings of said corporations, and likewise showing in any way the value of any of the property and assets or franchises of said corporation. (*b*) The record and report which you have in your possession of all the evidence, oral or documentary, delivered upon the application of the Georgia Railway and Power Company for increased rates for electric current for light, power, and other purposes, which application was decided by your body on August

14, 1918.  (c)  A detailed inventory and appraisal of the property of the Georgia Railway and Electric Company, as made March 18, 1912, by W. A. Baehr.  (d)  All applications made to your body at any time by the Georgia Railway and Power Company or the Georgia Railway and Electric Company, for permission to issue stocks or bonds, together with the action of the commission thereon.  All the documents and papers aforesaid are in your possession; and the plaintiff gives this notice in order to use them at the hearing of the injunction as hereinbefore set forth.  (d)  The file containing the petition of the City of Atlanta against the Georgia Railway and Electric Company or Georgia Railway and Power Company, asking for a reduction in the electric current for heat, light, and power.  (e)  All papers accompanying said file just mentioned, whether the same be petitions by other persons for like reduction in rates, and also papers showing the proposed rates finally agreed on between the City of Atlanta and said Electric Company.  (f)  All schedules of rates for light, heat, or power filed by the Georgia Railway and Electric Company, or the Georgia Railway and Power Company, during the years 1911, 1912, 1913, 1914, 1915, 1916, 1917, 1918.  (g)  Any action by the Railroad Commission of Georgia upon any of the applications or schedules hereinbefore referred to.  Said papers and documents to be used as evidence by the plaintiff upon the hearing of the injunction above referred to."  The Railroad Commission declined to respond to the notice, on the ground that the papers and documents called for were public papers required to be kept in the office of the commission, and that the railroad commission was not subject to the process of notice to produce.  The court held that the railroad commission was not bound to produce the papers, and error was assigned on this ruling.  Error was also assigned upon the ruling of the court declining to require the railroad commission to produce in response to a notice to produce certain "Green Books" kept by the Georgia Railway and Power Company, which contained a statement of the assets and liabilities of the power company and its subsidiary companies, which "Green Books" had been turned over to the Railroad Commission by the Georgia Railway and Power Company, and were used at the hearing before the railroad commission.  The judgment refusing to require the railroad commission to produce such "Green Books" was upon the

ground that it was not required by law to produce its original documents. It is declared in the Civil Code, § 5798: "The certificate or attestation of any public officer, either of this State or any county thereof, shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper of file, or other matter or thing in their respective offices, or pertaining thereto, to admit the same in evidence in any court of this State." Section 5 of the act of 1907, supra, in part declares: "The printed reports of the railroad commission, published by its authority, shall be admissible as evidence in any court in Georgia, without further proof, and the schedules of rates made by the commission and any order passed or rule or regulation prescribed by the commission shall be admissible in evidence in any court in Georgia upon the certificate of the secretary of the commission." Ga. L. 1907, p. 73. In *Richardson* v. *Whitworth*, 103 *Ga.* 741 (30 S. E. 573), it was held: "Since administrators' bonds are required by law to be recorded and kept of file in the ordinary's office, a duly certified copy of such a bond is admissible as primary evidence. Consequently, the introduction of 'the record' of such a bond was properly allowed over objection thereto based on the ground that the original had not been produced nor a copy thereof 'established.' " In *Metropolitan Street Railroad Co.* v. *Johnson*, 90 *Ga.* 500 (3) (16 S. E. 49), it was held: "A municipal ordinance may be proved by the production of the original book of ordinances, identified as such by the clerk of the corporation and shown to have come from his custody. Notwithstanding the statute of Sept. 19, 1891 (Acts 1890-91, p. 109), makes an official certified copy evidence, it is not the exclusive evidence." In the Civil Code, § 5837, it is provided: "The several courts shall have power on the trial of any cause cognizable before them respectively, on notice and proof thereof being previously given by the opposite party or his attorney, to require either party to produce books, writings, and other documents in his possession, power, custody, or control, which shall contain evidence pertinent to the cause in question, under circumstances where such party might be compelled to produce the same by the ordinary rules of proceeding in equity." Under the strict letter of this law, it might have been in the power of the court to have required the railroad commission to produce the papers called for by the notice; but all of the papers

held by the commission called for by the notice were public records of the commissioners, who were public officers of this State. As such they were open to inspection by the public under proper regulation, and certified copies of any part of these records were admissible as primary evidence. It would be a great inconvenience to the railroad commission and at the risk of losing the papers of file in that office, if it should be required to remove original documents from that office to the several courts of this State, to be used as evidence. If the commission should be required to produce its original papers on notice to produce in cases where the commissioners were themselves parties to a suit, it could likewise be done under a subpœna duces tecum in a case in which the commissioners were not parties. These and other reasons might be suggested why the court should not require the production of the original papers.

6. Under the pleadings and the evidence, the judge was authorized to hold that the order increasing the rates was not shown to be unreasonable or unjust or void on any ground of attack. Under such circumstances there was no error in refusing an injunction.

*Judgment affirmed. All the Justices concur, except*

FISH, C. J., dissenting. I am constrained to dissent from so much of the opinion of the majority of the court as is embodied in the third headnote and the corresponding division of the opinion. In my judgment the express provisions of the statute set out in section 2662 of the Civil Code preclude the railroad commission from impairing or invalidating any contract, made with its assent subsequently to the passage of the act of 1907, between a municipality and a public utility corporation such as the one which is a party to this case.

HILL, J., concurring specially as to division three of the opinion. The authority to determine what are just and reasonable rates is vested exclusively in the Railroad Commission of Georgia; and regardless of contracts between the City of Atlanta and the Georgia Railway and Power Company fixing rates, and whether the commission assented thereto, the commission properly exercised its power in fixing the rates under review.