41021. ATLANTIC COAST LINE RAILROAD COMPANY
et al. v. DAUGHERTY, Administratrix.

DECIDED JANUARY 18, 1965—REHEARING DENIED
FEBRUARY 8, 1965.

146

*Bennett, Pedrick & Bennett, Larry E. Pedrick, Charlton E. Symmes,* for plaintiffs in error.

*Joseph B. Bergen,* contra.

EBERHARDT, Judge. At common law no man was bound to furnish evidence to be used against himself. The privilege before trial of inspecting documents, articles, and the like in possession of an adversary was simply not accorded a litigant. These could be obtained at the time of trial by the giving of a notice to produce—the penalty for failing to produce being the admission of secondary evidence, but discovery was available only by means of a bill in equity.

In this State the equitable proceeding, itself a somewhat cumbersome thing clothed with restrictions and technicalities, has been used but little. It is available only when there is no other adequate remedy. *Coca-Cola Co. v. City of Atlanta,* 152 Ga. 558 (110 SE 730, 23 ALR 1331); *Code Ch.* 38-11. Discovery has been available at law since 1847. *Code Ann.* § 38-1201 et seq. But this method, too, has not been in general use. Indeed, both at law and in equity, it is discouraged by the provision of *Code* § 38-1302: "A petition for discovery merely, or to perpetuate testimony, shall not be sustained unless some reason shall be shown why the usual proceeding at law is inadequate."

It was a rather sterile procedure until March 25, 1959, when the Discovery Act, designed to make discovery a simple, facile and effective practice, was adopted by the General Assembly. The new Act follows to a great extent provisions of the Federal Rules of Civil Procedure relating to the matter of discovery, and is in keeping with the practice adopted by many of the other States. The old common law rules in this area have been pretty well abandoned in England and it has become an established practice in the courts of that country to afford discovery on a somewhat similar basis.

While new with us, it is in keeping with the philosophy and the practices which have evolved and have been adopted in legal circles throughout the English speaking world. We have had occasion to interpret the Act but few times since its adoption. See *Reynolds v. Reynolds*, 217 Ga. 234 (123 SE2d 115); *Setzers Super Stores, Inc. v. Higgins*, 104 Ga. App. 116, 119 (121 SE2d 305); *Underwood v. Atlanta & W. P. R. Co.*, 105 Ga. App. 340, 356 (124 SE2d 758); *Tracy's Auto Parts, Inc. v. Turner*, 105 Ga. App. 418 (124 SE2d 687); *Floyd & Beasley Transfer Co. v. Copeland*, 107 Ga. App. 304 (130 SE2d 143); *Wilson v. Barrow*, 107 Ga. App. 555 (4) (130 SE2d 812); *Fricks v. Cole*, 109 Ga. App. 143, 146 (3) (135 SE2d 512); *Richardson v. Potter*, 109 Ga. App. 559 (4) (136 SE2d 493); *Old Colony Ins. Co. v. Dressel*, 109 Ga. App. 465 (136 SE2d 525), but see *Old Colony Ins. Co. v. Dressel*, 220 Ga. 354 (138 SE2d 886); *Acres v. King*, 109 Ga. App. 571 (136 SE2d 510); *Rider v. Rider*, 110 Ga. App. 382 (138 SE2d 621); *Sorrels v. Cole*, 111 Ga. App. 136; *Grasham v. Southern R. Co.*, 111 Ga. App. 158; and *Bradford v. Parrish* 111 Ga. App. 167. In none of these cases, however, were the questions now before us answered. Only in *Reynolds, Setzers, Sorrells* and *Bradford* was the question akin.

Much confusion has arisen in the decisions of both State and Federal courts due to the interchangeable use of some terms which are not really the same, having different connotations, e.g., "privileged" and "work product," or "good cause" and "necessity or justification." In the course of this opinion we shall attempt to indicate some of the differences in these terms in the hope that a proper understanding and use of them will help to keep the discovery procedure and practice in the perspective intended, which is, of course, a furtherance of the object of all legal investigation—the discovery of truth. *Code* § 38-101.

Plaintiff's motion was brought under the provisions of *Code Ann.* § 38-2109 (a), which is virtually the same as Federal Rule 34. The relevant portion provides: "Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of section 38-2105 (b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photo-

graphing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by section 38-2101 (b) and which are in his possession, custody or control. . . The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

It is to be observed that this section applies only between *parties* to a pending action, a condition which is met in this instance. Section 38-2105 (b) (Fed. Rule 30 (b)) simply provides for the obtaining of protective orders to avoid the disclosure of trade secrets, prevent harrassment, embarrassment or oppression, or to limit the scope of the discovery which, under § 38-2101 (b) (Fed. Rule 26 (b)) encompasses "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

Defendant contends that the matter sought by plaintiff's motion is privileged, or is the attorney's work product, but does not contend that it is not otherwise within the permissible scope. It is further urged that no good cause for production of any of the items sought has been shown.

■ *Privileged matters.* If protection as privileged documents is to be extended it must be done under *Code Ann.* § 38-418 (2) or § 38-419 as communications between attorney and client or "to any attorney, or his clerk, to be transmitted to the attorney pending his employment, or in anticipation thereof" which "shall never be heard by the court." Privilege is thus absolute, and if a matter is privileged it is not discoverable.

The statements of the railroad crew members obtained by the claim agent or investigator of the railroad in the regular course of business and by him transmitted to the superintendent or to his superior do not appear to be "communications to [the railroad] attorney, or to his clerk, to be transmitted to the attorney." Rather, we regard them as statements from the railroad agent to his principal. "Communications between principal and agent are not privileged." *Metropolitan Life Ins. Co. v. Johnson*, 61 Ga. App. 282, 284 (5 SE2d 920). The mere fact that at some later time the statements are transmitted to the railroad attorney either for use in preparing a defense to litigation that may have arisen out of the occurrence to which the statements referred does not render them communications to the attorney or bring them within the privileged category. "It is axiomatic that one cannot render privileged that which is otherwise not privileged merely by placing it in the hands of his attorney." Humphries v. Penna. R. Co., 14 FRD 177 (1) (N.D. Ohio).

Under the overwhelming weight of authority under Rule 34 of the Federal Rules of Civil Procedure (which is literally the same as *Code Ann.* § 38-2109 (a)), the statements are not privileged. See 4 Moore's Federal Practice (2d Ed.) §§ 26.22, 26.23 [8.-2]; 2A Barron & Holtzoff, Federal Practice & Procedure § 651 (1961 Ed.); Annot. 73 ALR2d 12, § 23; Annot. 96 ALR2d 125. There is no privilege under the Discovery Act of 1959 unless it is afforded under other provisions of the laws of this State.

In determining whether the statements are to have protection under *Code Ann.* § 38-418 (2) or § 38-419 we should approach the matter by confining the attorney-client privilege to "its narrowest permissible limits under the statute of its creation," Brookshire v. Penna. R. Co., 14 FRD 154 (4) (N.D. Ohio), for it is only in that way that we can afford the provisions of the Discovery Act, of which *Code Ann.* § 38-2109 (a) is a part, the liberal construction and interpretation that will enable it to accomplish the purpose for which it was intended. We have recognized the purpose of the Act and the necessity for a liberal construction. *Setzers Super Stores, Inc. v. Higgins*, 104 Ga. App.

116, supra, at p. 120. See *Reynolds v. Reynolds*, 217 Ga. 234, supra, at p. 246.

We are not unaware of *Atlantic C. L. R. Co. v. Williams*, 21 Ga. App. 453 (2) (94 SE 584), where it was held that reports of a conductor to the railroad superintendent of transportation concerning the ejectment of a passenger which were to be transmitted to the railroad attorneys for appraisal of liability and for use in the preparation of a defense if litigation should ensue, were privileged communications. We think that holding went beyond the limits of *Code* § 38-419. If permitted to stand, much of the purpose of the Discovery Act will be frustrated, for every report or statement taken in connection with an accident or other occurrence in which there is the possibility that litigation will ensue can be wrapped in the cloak of attorney-client protection. That portion of the decision, certainly in the light of the provisions and purpose of the Discovery Act, is unsound and is specifically overruled.

■ *Work Product.* Defendant contends that the statements of witnesses sought by plaintiff, if not privileged, are a part of the "work product" of its counsel within the meaning of that term as defined in Hickman v. Taylor, 329 U.S. 495 (67 SC 385, 91 LE 451), and thus are entitled to protection from discovery in the absence of a showing of "necessity and justification." This position is sound only if the statements are a part of the attorney's work product.

What is "work product"? It was asserted in the Hickman case (p. 510), that "Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to

protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals as the 'work products of the lawyer.' "

That this is not all-inclusive is made clear by the further assertion that, "We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."

Prior to the adoption of the Discovery Act in 1959 it had been held that statements obtained in connection with the investigation of an accident by one who was the "special agent, adjuster and attorney" for a defendant's liability insurance carrier, *Dixie Mfg. Co. v. Ricks*, 153 Ga. 364 (1) (112 SE 370), or the reports of a defendant's physician as to the plaintiff's condition as determined from an examination, *Metropolitan Life Ins. Co. v. Johnson*, 61 Ga. App. 282, 283 (3), supra, were admissible, it not appearing that these were made for the purpose of preparation of a defense by the defendant's attorney; ergo they should be discoverable.

Under the Federal Rules, and since the definition of "work product" in the Hickman case, it has been generally held that statements taken under circumstances similar to those appearing in this case (as disclosed by the motion and the objections) are not within the "work product" protection. For example, in Szymanski v. New York, N. H. &c. R. Co., 14 FRD 82 (S.D.N.Y.), Judge Sugarman in so ruling, said: "Defendant asserts these to be 'privileged' statements because they 'were taken by a special representative of the Claim Department under the jurisdiction of the defendant's Law Department in preparation of a defense to a claim or suit.' It is now settled that statements thus obtained are not 'work product' of the defendant's counsel." Accord: Southern R. Co. v. Campbell, 309 F2d 569 (5th Cir.); DeBruce v. Penna. R. Co., 6 FRD 403 (E.D. Pa.); Herbst v. Chicago, R. I. &c. R. Co., 10 FRD 14 (S.D. Iowa); Virginia

Metal Prod. Corp. v. Hartford Acc. &c. Co., 10 FRD 374 (S.D. N.Y.) (immaterial that investigator was a member of the bar); Brown v. New York, N. H. &c. R. Co., 17 FRD 324 (S.D. N.Y.); Crowe v. Chesapeake & Ohio R. Co., 29 FRD 148 (E. D. Mich.); Johnson v. Ford, 35 FRD 347 (D.C. Colo.); Nordeide v. Penna. R. Co., 73 N. J. Super. 74 (179 A2d 71). See, Annot. 73 ALR2d 12; Note, 36 Ind. L.J. 186 (1961); Comment, 62 Mich. L.R. 1199 (1964).

In Nordeide v. Pennsylvania R. Co., 73 N. J. Super. 74, supra, in connection with its opposition of the motion for discovery of the statements, an affidavit of the general counsel of the railroad was submitted in which he asserted: "The Pennsylvania Railroad Company employs a Claim Department, which operates in every state in which the railroad does business as a carrier. The Claim Department is under my supervision. The Claim Department is under specific order from me, immediately upon the happening of any accident on defendant's right of way, to investigate the same and to take written statements for the purpose of defending litigation with respect to any accident."

Rejecting this as a sufficient basis for bringing the statements taken within the work product protection, the court observed that it does not follow from these general instructions applicable to any accident that may occur that the statements were made in anticipation of litigation within the meaning of the "work product" rule—though they may well have been taken with the realization that a suit might result from the accident. "To so hold," the court said, "would preclude discovery of any statements or reports except in hardship cases. Proper interpretation of the rule requires that discovery be allowed of all statements or reports of objective facts obtained by a party during the course of an investigation conducted as a regular practice or as a normal part of its business."

We apprehend that every carrier, liability insurance company,[1] and every business of significant size has a standard practice of investigating accidents in which it or its servants and agents may be involved while performing its functions.

---

[1] As to an adjuster's "work product", see *Sorrells v. Cole*, 111 Ga. App. 136.

That is simply a matter of common prudence. To hide the statements obtained or facts discovered in the course of these investigations behind the shield of "work product" would pervert the purpose of that doctrine, which is, simply stated, to protect the *attorney's preparation for trial* from discovery. These statements in a manner of speaking and in the broadest sense may be in anticipation that some litigation may ensue or that it may become necessary to prepare for the defense of a suit, but they are not the "work product" of the lawyer.

This is not to say that "work product" encompasses only that which the attorney personally does. Once the attorney-client relationship obtains as to the particular matter, he may have investigations made or statements taken under his direct instruction and supervision, and these may be deemed a part of what the attorney has done.

Neither plaintiff's motion nor defendant's response and objections make it clear whether any of the statements sought were taken under circumstances that would bring them within the work product rule. On the contrary, the indication is that any statements which the attorney may have had at the time of filing the objections had been obtained by the railroad claim agents in regular course of business and later transmitted to him. Unless facts appear putting the matter sought to be discovered within the rule, they are discoverable. If it does appear that they are work product, the party seeking discovery must then show necessity or justification before being entitled to discovery.

■ (a) *Good Cause.* Defendant urges that no good cause was made to appear as required under *Code Ann.* § 38-2109 (a)[2] for the production of the witnesses' statements, and points out

---

[2]Providing in pertinent part: "(a) Generally. Upon motion of any party showing *good cause* therefor. . ." (emphasis added). This good cause requires a lesser showing than that of "necessity or justification" required for production of "work product" material. 4 Moore, supra, § 26.23 [8.-2]; § 34.08 at n. 19; 2A Barron & Holtzoff, supra, p. 139, § 652.2; p. 419, § 796. Some courts have called both ingredients "good cause," thereby compounding the confusion that already exists.

that it had responded with the names and addresses of the witnesses. No showing was made of any effort by plaintiff to interview these witnesses nor was it shown that the witnesses were inaccessible or refused to be interviewed. From aught that appears, no difficulty in talking to the witnesses could be anticipated. There was no showing that burdensome expense or financial hardship would be involved. No time factors were shown, such as the lapse of time between the accident and the employment of counsel by plaintiff or the proximity of the time the statements were taken to the time of the accident. See Guilford Nat. Bank v. Southern R. Co., 297 F2d 921.

While we do not mean to imply that movant must show all of these matters as a part of good cause—or any of them for that matter, for it may well appear from other matters shown or from matters in the record—we do think that it is something more than merely the assertion that the statements, if existing, are relevant to the issues, are in the defendant's possession and that movant wants them. See Schlagenhauf v. Holder, 379 U.S. 104 (85 SC—, 13 LE2d 152). Here movant alleged in her motion that "it is absolutely necessary that plaintiff's counsel have an opportunity to inspect, copy or photograph the statements or documents," but this is a bare conclusion. No facts indicating the necessity were alleged and none were shown at the hearing.[3]

Nothing in the motion indicates that plaintiff wants other than the *originals* of the statements and we assume that originals are what she seeks to have produced.[4]  Cf. *City of Atlanta*

---

[3]The good cause may appear aliunde the motion itself. The statute does not require that it be pleaded, but *shown*. But if it appears on the face of the motion the opposite party may forthwith agree to produce the statements, documents, etc. and obviate the necessity for a hearing.

[4]It is true that the order of the court directs the production of the originals or copies, or the affording of an opportunity to inspect and copy. But insofar as it provides for the producing of copies it is at variance with the motion. Movant may have good reason for wanting to see the originals, while the other party may have good reason for wanting adequate protective provisions if originals are to be produced.

If copies were desired, *Code Ann.* § 38-2109 (b) provides in

*v. Georgia R. &c. Co.*, 149 Ga. 411, 418 (5) (100 SE 442). Good cause is required by the statute for the production of original documents. Nedimyer v. Pennsylvania R. Co., 6 FRD 21 (E. D. Pa.).

This good cause may be shown in a number of ways, depending on the particular situation involved, and is largely within

---

part: *"Copies* of such designated documents or other things listed in (1) of subdivision (a) of this section as are subject to discovery without a showing of necessity or justification may be obtained *without a court order* by requiring such copies to be attached to the answers to interrogatories under section 38-2108 or produced at a deposition hearing in response to a notice to produce." (Emphasis added). This subdivision basically conforms to the 1955 proposal by the Supreme Court Rules Committee to amend Rule 34. Whether the effect of this part of the amendment was to eliminate the showing of "good cause" when the production of *copies* of ordinary, non-work product documents, such as the statements here, is sought either through interrogatories (Fed. Rule 33; *Code Ann.* § 38-2108) or by use of a subpoena duces tecum (Fed. Rule 45 (d) ; *Code Ann.* § 38-2112) is not now before us. See *Reynolds v. Reynolds*, 217 Ga. 234, supra, at p. 239 (2), where the record shows a notice to produce under this Code section was utilized but no "good cause" point was raised; 2A Barron & Holtzoff, supra, at § 791; 4 Moore, supra at § 34.01 (5) (1963 Supp.) ; Tolman, Production of Documents and the Work Product of a Lawyer, 58 Columbia L. R. 498, 509-513 (1958) ; Developments in the Law—Discovery, 74 Harv. L. R. 940, 966, 967-968 (1961) ; Wright, Discovery, 35 FRD 39, 53 (1964). For a contrary view, see Savell, Discovery Proceedings from the Defendant's Point of View, 26 GBJ 143, 148 (1963). If that be the case it would seem logically to follow that if copies only of non-privileged and non-work product items are sought in a motion under § 38-2109 (a) the required showing of good cause is minimal.

When adopting this statute, the General Assembly substituted in § 38-2109 (b) the language "notice to produce" for "a subpoena under Rule 45 (d)" which appeared in the proposed amendment of Rule 34. The notice to produce (*Code* § 38-801) applies only to parties. The effect of this change in language on the construction of the statute is not in question here.

the sound discretion of the trial judge. See 2A Barron & Holtzoff, supra, p. 419, § 796, footnote 61 and pages 425, 430. 4 Moore, supra, at § 26.32 [8.-2]. "Because the matter is so highly discretionary—the results varying from case to case depending on the specific facts shown to a particular judge—precedent in this area is sharply conflicting." Johnson v. Ford, 35 FRD 347 (D.C. Colo.). The protective order provisions of *Code Ann.* § 38-2105 (b) (Fed. Rule 30 (b)) may be invoked by the party resisting discovery.

That these discovery provisions are to be liberally interpreted was recognized in *Setzers Super Stores, Inc. v. Higgins*, 104 Ga. App. 116, 120, supra, where it was held that "the purpose of the deposition-discovery procedure is not only for the ascertainment of facts, but also to determine what the adverse party contends they are, and what purpose they will serve, so that the issue may be narrowed, the trial simplified, and time and expenses conserved." And see *Reynolds v. Reynolds*, 217 Ga. 234, supra, at p. 239 (a), 246. The showing of good cause should not be difficult and in most instances the order will follow.

■ *Necessity or justification.* This term or expression does not appear in § 38-2109 (a). It stems from the Hickman case and is found in the proposed amendment to Rule 34 of the Federal Rules suggested by the Supreme Court Rules Committee in 1955, but never adopted. However, when our Discovery Act was adopted by the General Assembly in 1959 the proposed amendment was included as § 38-2109 (b), and the term is found there. Clearly it can have nothing to do with privileged matters, for they are not discoverable. It is something more than the general "good cause" requirement as to unprivileged matters under § 38-2109 (a). We are convinced, in the light of its history, that it is intended as a requirement for the discovery of matter which is a part of the attorney's work product, whether sought under § 38-2109 (a) or § 38-2109 (b). It was held in the Hickman case (p. 512), that "the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons

158

to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted." Thus, the showing required for discovering any portion of the attorney's work product is of a higher order than that of good cause required in other instances. See the authorities cited in Headnote 2, supra. That showing should be such as to lead the court to a conclusion that it is only by allowing discovery that a manifest injustice can be averted or an intolerable hardship prevented. Discovery of an attorney's work product will generally be withheld. See Wright, Discovery, 35 FRD 39, 53 (1964).

The movant having fallen short in making the required showing of good cause the judgment must be

Reversed. Nichols, P. J., Bell, P. J., Frankum, Jordan, Hall and Russell, JJ., concur. Felton, C. J., and Pannell, J., concur in the judgment.