McCORD *v.* McCORD; and *vice versa.*

1. The court did not err in refusing, upon oral motion in the nature of a general demurrer at the trial term, to dismiss the petition in this case on the ground that a schedule of the property of the plaintiff and defendant was not attached to the petition.

2. A confidential communication by a wife to her husband, whether orally made or by letter, is privileged, and in a suit between the husband and wife will be excluded from evidence upon objection made by the wife based upon the ground of privilege. But such privilege may be waived. And where, as in the present case, the suit was brought by the wife for divorce on the ground of desertion, and the wife gave testimony in her own favor showing that her husband had willfully and continuously deserted her for a period of three years prior to the commencement of

the suit, it was competent for the husband to introduce her letter in which the wife, at a time immediately prior to the beginning of the period of alleged desertion, wrote requesting him not to make any attempts to see her upon her return to her home, from which she had been absent a short time on a visit; the plaintiff and defendant during their married life, up to the time when she left on the visit, having resided upon the property of the plaintiff.

3. A complaint of a lengthy excerpt from a charge, covering several pages and embracing numerous and varied propositions of law, some of which are clearly applicable to the facts of the case, presents no ground for reversal of a judgment refusing a new trial, where the assignment of error is that the charge complained of did not correctly state the law applicable to the facts of the case.

4. Where a suit brought by a wife for divorce from her husband is based upon the ground of desertion, as in the instant case, and the husband introduces in evidence the letter from the wife, referred to in the second headnote, and from the wife's testimony it appears that the husband actually remained away from her home continuously for three years prior to the filing of the suit, it can not be said that the court erred in submitting to the jury the question whether or not his remaining away "was done with the consent and agreement upon the part of the plaintiff."

(a) The letter referred to, considered in connection with the testimony of the wife and the fact that the husband did remain away, would have authorized counsel for the defendant to argue to the jury a theory of the case based upon a contention that the absence of the husband for a period of three years from the home of the wife was by consent and agreement; and the court having stated in his charge that such was the contention of the defendant, it will not be assumed, in the absence of anything to show that the defendant did not make this contention, that the statement of the court was not true.

5. In one part of the charge to the jury the judge used language which imposed upon the defendant the burden of showing, in case the jury believed that he wilfully remained away from the wife for a period of three years, that this was done by "consent and agreement," whereas it would have been a sufficient reply upon the part of the defendant to show that he had remained away from the wife with her consent or by agreement.

6. The court should not have so charged the jury as to make the undisclosed intent with which the wife wrote the letter referred to in the second headnote a material fact for the consideration of the jury in passing upon the question whether or not the absenting of himself for a period of three years by the husband was with the consent of the wife, in the absence of evidence to show that the husband knew of the intent with which the letter was written.

JUNE 17, 1913.

Divorce. Before Judge Thomas. Brooks superior court. January 20, 1913.

*J. R. Walker, Dan R. Bruce,* and *J. D. Wade,* for libelee.

*G. C. Edmondson, McCall & McCall,* and *Branch & Snow,* contra.

Beck, J. Mrs. McCord filed her libel for divorce, basing her action upon the alleged willful and continuous desertion of her husband for a period of three years prior to the commencement of the suit. The husband filed his plea and answer, denying the truth of the material allegations in the plaintiff's petition. Upon the trial a verdict in favor of the petitioner, granting a total divorce, was rendered by the jury. A motion for a new trial was made by the respondent, which being overruled, he excepted. The plaintiff filed her cross-bill of exceptions, complaining of the admission in evidence, over objection, of a letter written by her to the husband a short time before the commencement of the period of desertion alleged in the petition.

1. The court did not err in refusing, upon oral motion in the nature of a general demurrer at the trial term, to dismiss the petition on the ground that a schedule of the property of the plaintiff and defendant was not attached to the petition.

2. Both in the motion for a new trial filed by the husband and in the cross-bill of exceptions filed by the wife, who was the prevailing party in the action, exceptions are taken to the admission in evidence of communications in the shape of letters from the complaining wife to her husband, which letters were written a short time before the alleged desertion began. The plaintiff introduced three of these letters written by herself, and the husband introduced one letter from his wife written to him. Objection was made to the introduction of the letters written by the plaintiff and tendered at the trial by her counsel, upon the ground, among others, that the same were nothing more than self-serving declarations. The letters contained, among statements and communications that are immaterial, complaints upon the part of the writer of the husband's coldness towards the writer and neglect of her, of his failure to give indications of love and affection, and of indifference to her welfare. This is not a full statement of the contents of the letters, but it sufficiently illustrates their character for the purposes of this decision. The letter from the wife to the husband, which was introduced in evidence by the husband over objection of counsel for the plaintiff, was as follows: "Mr. McCord: I send you your ring and also the brooch, and ask you to kindly return my ring by registered mail to Quitman, Ga. I expect to reach home soon, and ask you in advance to not make any attempts to see me. Very resp't'ly, [Signed] Mattie E. McCord."

While the question of the admissibility of this last letter is raised in the cross-bill, the question is considered here in connection with the objections raised by the defendant to the admission of the letters from the wife which were tendered in evidence by her. So far as relates to the letters written by the wife to the husband and tendered by her, they should have been excluded upon the ground stated, viz.: that in so far as they were relevant to the case they were purely self-serving declarations. It was not competent for the wife to write to the husband charging him with certain acts and a course of conduct which, in a suit subsequently brought for divorce, would corroborate her testimony as to his desertion, and then, by means of a notice to produce, have these letters brought into court and made evidence for herself. Whether these letters at the time they were written were penned with an eye to the use which the plaintiff subsequently sought to make of them, or whether penned under the stress of sincere grief and passion aroused by the husband's real or seeming neglect or indifference, they contain nothing more, relatively to the issue involved between the husband and wife in this case, than declarations made by the wife in her own favor, and they should have been excluded under the rule applicable to self-serving declarations offered by the party making them.

As to the letter written by the wife to her husband, introduced in evidence by him, counsel for the wife raised the objection that it was in the nature of a confidential communication between husband and wife, and fell within the inhibition contained in section 5785 (1) of the Civil Code, which excludes, on account of public policy, communications between husband and wife. The language of the section referred to is as follows: "There are certain admissions and communications excluded from public policy. Among these are—1. Communications between husband and wife." In discussing a somewhat similar provision at common law and in other jurisdictions in this country, Prof. Wigmore, in his work on Evidence, says: "(1) That the disqualification of husband and wife to testify the one on the other's behalf is distinct from the privilege of either against the other's disclosure of communications ought to be plain enough. The judicial confusion of them is nevertheless frequent; and the occasional legislative commingling of them in the same sentence of the same enactment has given rise to much of this confusion. Perhaps the commonest error is to ignore

the husband's right to waive the privilege, i. e. when he offers the wife to prove his communications to her, the erroneous tendency is to treat the disclosure as absolutely prohibited in spite of his consent. A disqualification, of course, can not be waived; but it is of the essence of this privilege (as of every privilege) that it may be; and yet the communications, when offered by the privileged person, are even yet repeatedly excluded, in apparent ignorance of the distinction." Vol. 4, p. 3259. And on page 3268 of the same work it was said: " (1) The privilege is intended to secure freedom from apprehension in the mind of the one desiring to communicate (ante, § 2332) ; it thus belongs to the communicating one, and the other one—the addressee of the communication—is therefore not entitled to object; unless, as already noticed (ante, § 2338, par. 4), the latter's silence is desired to be treated as an assent and an adoption of the statement, which thus makes it doubly a communication and doubly privileged. (2) The spouse possessing the privilege may of course waive it. The waiver may be found in some extrajudicial disclosure, or in some act of testimony which in fairness places the person in a position not to object consistently to further disclosure,—for, as already noted (ante, § 2327), the principle of waiver can not depend solely upon the interpretation of conduct implying willingness to waive. Nevertheless, in a few courts the doctrine of waiver appears to be ignored entirely. This confusion of a disqualification with a privilege has been already adverted to (ante, § 2334) ; it is entirely unjustifiable (except as required by the express words of some perversely-phrased statute), and is so radical an error of principle that no further argument would cure such a misapprehension."

The reasoning in the passages last quoted from Prof. Wigmore's work and the distinction between a disqualification and a privilege seem to be sound, and relatively to the question under consideration the same distinction is drawn in Greenleaf on Evidence. Laying it down as an accepted rule that "one spouse may not testify to confidential communications by the other," he says: "Under the third head [which embraces the rule last stated], the principle applies quite irrespective of whether either spouse is a party to the cause. Moreover, the death or the divorce of the other member does not affect the policy of prohibition. Again, the other member may always waive the privilege." 1 Greenleaf on Evidence, § 333c.

While the distinction which is pointed out in the foregoing between a privilege and a disqualification does not seem to have been distinctly recognized in any decisions by this court, it has been recognized in other jurisdictions in decisions which are cited to support the passage from Wigmore on Evidence, quoted above; and in no case in our own decisions is it ruled that the code section relative to the exclusion of communications between husband and wife creates a disqualification. It is true that in numerous decisions of our own court it has been held that one spouse is not competent to testify as to confidential communications from the other; but in none of the cases, so far as we are able to discover (and we have examined all to which our attention has been called or which we have been able to find after diligent search), has it been held that the code section referred to did not create a privilege instead of a disqualification, and that the privilege could not be waived by the possessor, that is, by the member making the communication. Had it been the legislative intent, by this section, to create an absolute disqualification, it could have appropriately been done by making it an exception to the rule in reference to the competency of witnesses, laid down in the Civil Code, § 5858.

Now, while it appears that the wife is insisting upon her privilege, and that the letter tendered by counsel for the husband should have been excluded under the statute when the possessor of the privilege was apparently standing upon it, it would seem that although apparently insisting upon the privilege the wife had, before raising the express objection to the introduction of her letter, waived the right to make such an objection and destroyed her privilege under the statute by her conduct; that is, by testifying to conduct upon the part of her husband and insisting that it should be construed as amounting to desertion. That is, she testified: "We [that is the plaintiff and the defendant] lived together as husband and wife until July, 1906, when I left home and went to Waynesville, N. C., on a summer vacation. I did not return home from Waynesville until the middle of October, 1906. When I left home for Waynesville Mr. McCord and myself were living in my home in Quitman, Ga. Mr. McCord accompanied me to the train when I left for Waynesville, and I have not seen him since. He has never returned to my home and lived with me since, nor provided a joint home for myself and him, nor has he made any proposal for me to live with

him." Here the witness testified to conduct on the part of the husband which the jury might have found amounted to desertion. While she stated, seemingly as a bare fact, that he did not return to her home and did not live with her after her departure for Waynesville, that fact so stated might have the effect of producing one or another conviction in the minds of the jury, accordingly as it was coupled with another fact or disassociated from that other fact. While she testified to the bare fact that the husband did not return to her home, when this testimony is considered in connection with the allegations in her petition that the husband was guilty of desertion, the testimony given by her as to his not returning to her home is to be construed as meaning that he continued to absent himself from her home and remain away from her without her consent; for if it was with her consent, his mere absence would not amount to desertion. Consequently, in the light of the pleadings in the case and the basis of her suit, the wife was virtually testifying that the husband remained away from her without her consent, and thus practically brought into the case herself the question as to whether she had communicated to him a desire that he should remain away or a consent that he should remain away. She thus removed the veil that protects from the public gaze the privacy of the married life and shields communications from the wife to the husband from judicial inquisition. She herself destroyed her own privilege of protection from a disclosure of her communications to her husband. And having destroyed that privilege for the purpose of making out her own case, she could not have it restored and upheld for the purpose of maintaining the fabric, when it was proposed to subject it to a perfectly proper test instituted for the purpose of ascertaining whether that fabric rested on a solid foundation. The foundation of her case was desertion. The test of the solidity and strength of that foundation was, whether that seeming desertion was actual desertion, that is, willful desertion by the husband without cause and without consent of the spouse claiming to have been deserted. If the husband stayed away from the wife in obedience to and in compliance with her wish that he should stay away—that he should make no efforts to see her, surely she could not charge that he was guilty of desertion, whatever other grounds she may have had for complaint against him. And the wife's letter which was offered and intro-

duced in evidence in this case, unless explained itself, certainly explains the husband's conduct in remaining away from her.

3. Where a lengthy excerpt from a charge consisting of several pages is complained of on the ground that it does not state the law applicable to the facts, and the portion of the charge thus criticised embraces many and varied propositions of law, some of which are clearly applicable to the facts of the case, a new trial will not be granted upon this ground of the motion; such an exception is not sufficiently specific.

4-6. The rulings made in headnotes 4, 5, and 6 require no elaboration or discussion.

There are other inaccuracies appearing in the charge; but none of such gravity as to require the grant of a new trial, or of sufficient importance to require a discussion of them. In the cross-bill of exceptions filed by the defendant in error there is only one assignment of error, and that relates to the admission of the letter over objection which is set forth in the second division of this opinion; and as we have ruled above that this letter was properly admitted in evidence, no further discussion is required here.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur.*