### GUTHRIE *et al.* v. HARPER *et al.*

589

No. 6528.   December 13, 1928.   Rehearing denied January 25, 1929.

*D. M. Parker, H. W. Wilson, I. J. Bussell,* and *Levi O'Steen,* for plaintiffs.

*Parks & Garrett* and *Wilson, Bennett & Pedrick,* for defendants.

Hill, J. Duncan C. Carmichael died on November 8, 1925. Mrs. Cora Guthrie, a daughter of the deceased, G. W. Corbitt, and O. L. McQuaig sought to have probated a nuncupative will of Duncan C. Carmichael. After a hearing the ordinary declined to probate the alleged nuncupative will, and an appeal was taken, which before trial was dismissed by the appellants, who then filed in the court of ordinary a petition to probate what purported to be a written will of Duncan C. Carmichael, as follows:

"Nov. 5, 1925, the first will I made is lost or destroyed. I wanted to change it in different ways. I will not live much longer and I am deceived in B. A. Harper and his family and want Mrs. Cora Guthrie, G. W. Corbitte and O. L. McQuaig to administer on my estate. I want H. S. Guthrie my son-in-law to have interest in my estate as same as my children. I want Cora Guthrie to have the old home place at Manor and the Ford car that I bought from A. B. Sessoms for taking care of me, also receive a child's part in all the bal. of my estate. I don't owe B. A. Harper anything and I want him to account for the money and checks I turned over to him during the last three years. I don't want him to have the management of my property. But if there is anything coming to

them I want them to have it. I want all my just debts payed and the rest of what I have got be divided between all the heirs.

D. C. Carmichael.

his
"J. R. x Steedley     Myers Thomas     Harvey Thomas."
mark

Certain heirs at law of D. C. Carmichael filed a caveat alleging that "the said D. C. Carmichael, deceased, at the time it is alleged he made said alleged written will, was not of sound and disposing mind and memory, and was unable to make a will or transact any other business. He was a man of more than seventy years of age, and had been a great sufferer with chronic Bright's disease for two years prior to his death, and said disease had preyed on his body to the extent that it had affected his mind. That said disease is one that will affect the mind, and affected the mind of the said deceased to the extent that he was unable to transact any business for himself for several months prior to his death. That said disease had so affected his mind that he was not able to make a will or transact any other business three or four days before he died, and especially on Thursday, November 5, 1925, before he died on the Sunday following November 8, 1925. For these reasons caveators allege that the said D. C. Carmichael, deceased, at the time it is alleged he made said pretended will was not of sound and disposing mind and memory and was unable to make a will or transact any other business. . . Caveators further allege that the said D. C. Carmichael did not, as a matter of fact, make or attempt to make the alleged written will. Caveators deny that the writing offered for probate and purported to be the will of D. C. Carmichael is the will of D. C. Carmichael. Caveators deny that said writing represents the will and wishes of the said deceased. . . Caveators further allege that the alleged writing, which an effort is being made to admit to record and probate in solemn form, of the said D. C. Carmichael, by the said Mrs. Cora Guthrie, is false and without foundation in truth and in fact. . . Caveators further deny in toto all of the allegations made in the petition of the said Cora Guthrie to probate said alleged written will of the said D. C. Carmichael, deceased." The ordinary refused probate of the alleged will. The propounders entered an appeal, on the trial of which the jury returned a verdict in favor of the caveators.

The propounders made a motion for new trial, which was overruled, and they excepted.

■ Ground 1 of the motion for new trial complains "because the following written evidence was illegally admitted to the jury by the court over the objection of movants, to wit: Caveators introduced in evidence a certified copy of the petition and of the affidavit attached, as filed in the office of the ordinary of Ware County, Georgia, setting up a nuncupative will, which movants sought to propound before the discovery of the written will. Movants then objected to the admission of such evidence at the time same was offered. A copy of said petition to probate said nuncupative will being hereto attached, marked Exhibit A, and made a part or this ground for a new trial. Movants objected to said evidence: (a) Because it did not impeach the written will. (b) Because there is no inconsistency between an effort to establish a nuncupative will, because it must be done within thirty days and the probate later on, and within the time allowed by law of a written will. (c) Because such evidence would be prejudicial and not material." We are of the opinion that the evidence was admissible, under the facts of this case, as tending to show that the alleged written will was not then in existence; and for the purpose of impeaching the three witnesses who swore as to the nuncupative will, and as tending to contradict their sworn testimony as to the execution of the written will. The record discloses that the witnesses to the nuncupative will and the witnesses to the written will are the same. It being contended on the part of the caveators that neither the nuncupative will nor the written will was the act of D. C. Carmichael, we think the certified copy of the petition and the affidavit attached, as filed in the office of the ordinary, setting up the nuncupative will on the part of movants, was admissible for the purpose of throwing light on the question as to whether the attempt to probate either or both wills was fraudulent.

■ Ground 2 alleges error in admitting certain testimony of W. S. Booth, as follows: "On comparison of signatures on checks, and the signature on the purported will, which I have so thoroughly examined, will say that while they are similar in general appearances, that there is a great deal of difference—this looks more like an imitation of his signature." Movants objected, (a) because such evidence was a mere conclusion of the witness; (b) because

the admission of such evidence was prejudicial and harmful to the rights of the propounders. The Civil Code (1910), § 5835, provides: "Proof of handwriting may be resorted to, in the absence of direct evidence of execution. In such case, any witness is competent to testify as to his belief, who will swear that he knows or would recognize the handwriting. The source of his knowledge is a question for investigation, and goes entirely to the credit and weight of his evidence." The witness had testified: "Yes, pretty familiar with his [Carmichael's] signature. . . With reference to the signature on the written will, will say that they do not look like Mr. Carmichael's signature, while it is a very close imitation if it is not. No sir, for this reason Mr. Carmichael did not write quite as well in his last days as he did before, and there are slight variations in his signatures; but that does not look exactly natural. Generally, these other signatures correspond with his signature." We are of the opinion that the admission of the testimony objected to was not illegal for any reason assigned. It was not a mere conclusion, but was an opinion based upon the fact that the witness was familiar with the handwriting of the deceased, and had had business transactions with him, and from a comparison of the signature to the will with the checks (which had been proved to be genuine), the witness was of the opinion that the signature to the will was not genuine.

■ Ground 3 complains of certain lengthy excerpts from the charge of the court to the jury, covering two or three pages of the motion. They are excepted to as a whole. Certain of them, if not all, state some correct principles of law applicable to the case; and it has been ruled that a general assignment of error on a charge is not sufficient where a part of the charge excepted to is clearly legal. *McCord* v. *McCord,* 140 *Ga.* 170 (78 S. E. 833).

■ Ground 4 complains because the court erred in charging the jury as follows: "Now, gentlemen, in connection with this rule of law respecting impeachment of witnesses, I call your attention again to the fact that the testimony of certain witnesses introduced in this case, to the effect that one or more of the attesting witnesses, or the witnesses whose names appear as attesting witnesses, to this instrument sought to be probated as Mr. Carmichael's will, had testified differently in some investigation or hearing before the court of ordinary, involving the petition to probate this paper as

Mr. Carmichael's will, or efforts of parties in this case to set up and probate in that court a verbal or nuncupative will,—that the testimony of these witnesses, gentlemen, who have testified before you to the effect that these alleged attesting witnesses testified differently in those hearings before the ordinary, is to be considered by you only in connection with the attempted impeachment of these persons whose names appear on this document as attesting witnesses, and is not to be considered by you, gentlemen, as establishing as a fact, or tending to establish as a fact, the things to which those witnesses are alleged to have testified in the court of ordinary. You will consider that testimony, gentlemen, I believe of Mr. Sharpe and Judge Mattox, only for the purpose of considering and determining whether or not these witnesses whose names appear on this document as attesting witnesses have been impeached." It is alleged that this charge was error for the following reasons: "(a) Because it compared the testimony of the witnesses for the propounders and the testimony of the witnesses offered to impeach them, in a manner calculated to discredit the evidence of the witnesses for the propounders. (b) Because said charge amounts to the expression of an opinion by the court as to the credibility of the witnesses, in that it singled out certain witnesses of the caveators and referred to them by name, which tended to impress upon the jury the testimony of these particular witnesses. (c) Because the court called attention by name to two of the witnesses for the caveators, namely, Mr. Sharpe and Judge Mattox, and did not call like attention to the witnesses for the propounders whom it was sought to impeach by Mr. Sharpe and Judge Mattox."

In *Walker* v. *State,* 137 *Ga.* 398 (6) (73 S. E. 368), this court held: "Where there exists a difference between opposing counsel as to whether there is a discrepancy between the testimony of a witness and a previous statement alleged to be contradictory of the testimony, it is not error for the court to allude to the particular witness in stating the contentions of counsel in this respect, and instructing the jury that they must decide the controversy between counsel from the evidence in the case." We are of the opinion that the excerpt from the charge as set out above is not erroneous for any reason assigned.

■ The evidence, though conflicting, was sufficient to authorize

the verdict finding against the propounders of the will and in favor of the caveators. The court did not err in refusing a new trial.

*Judgment affirmed. All the Justices concur.*