A93A0763. JONES v. ABEL et al.
(434 SE2d 822)

ANDREWS, Judge.

Jones, a pseudonym used by the plaintiff/appellant, sued his former psychiatrist Abel and his clinic Behavioral Medicine Institute as the result of Abel's forwarding Jones' file to the attorney for Smith, a former employee of Jones involved in litigation with him. The file was sent pursuant to a request for production in that litigation to which Jones had not yet objected. The jury reached a verdict for the defendants and the court denied Jones' motion for j.n.o.v. Jones appeals, pro se.

The sole enumeration of error is that the trial court erred in denying Jones' motion for directed verdict at the conclusion of the evidence and his subsequent motion for j.n.o.v.

1. First, before considering the issue of the psychiatrist-patient privilege and the concomitant issues of discovery and waiver, the nature of the claim made by Jones against the defendants must be kept in view. In the pre-trial order, four claims were asserted against Abel and his clinic as the result of the release of the psychiatrist's records: 1) breach of the contract between the psychiatrist and his patient that a confidential and fiduciary relationship would be maintained; 2) public disclosure of private facts; 3) abandonment of the patient; and 4) failure "to apply to the treatment of Jones that degree of care and skill as, under similar conditions and like circumstances, is ordinarily employed by those members of the medical profession practicing as psychiatrists."

At the pre-trial conference, Jones, represented at trial by counsel, abandoned his breach of contract claim, opting to proceed in tort under the medical malpractice claim. Further, after the close of the evidence, the abandonment claim was withdrawn. The only two claims which were presented to the jury and upon which the jury was charged were the invasion of privacy claim and the malpractice claim.

In defense of these claims, Dr. Abel contended that his actions were in compliance with the requirements of Georgia law, specifically OCGA § 9-11-34 (c) (2) and the standard of care of psychiatrists in the same or similar circumstances and that Jones was not damaged by the release of the records in any event.

2. Considering the issue of the motions for a directed verdict as to the liability of the defendants and j.n.o.v., the record reflects that, after the presentation of the defendants' case, counsel for Jones made a motion for directed verdict on the ground that the "defendant here

had a responsibility to keep certain information private. . . . First, under the psychiatrist-patient privilege it is a matter of law in this state that that responsibility is absolute, without waiver or consent. Now, there is no consent for disclosure. And I submit . . . that there is no evidence here that amounts to a waiver of the psychiatrist-patient privilege as a matter of law. The *Sims v. State*[, 251 Ga. 877, 880 (5) (311 SE2d 161) (1984)] case . . . states basically that the psychiatrist-patient privilege cannot be waived, absent some express intentional act to do so. So I submit that the — even if [Jones] failed to file an objection, there was no waiver." The motion was further premised on the contention that the privilege is absolute and that OCGA § 9-11-34 may not require the production of privileged material, since it is by definition under OCGA § 9-11-26 (b) not discoverable.[1]

The jury was charged under OCGA § 24-9-21 (5) that communications between psychiatrist and patient are privileged. Further, the jury was charged that "only the patient can waive the privilege, and that the . . . privilege prohibits a psychiatrist from disclosing patient communications to anyone without the patient's express permission or waiver of the privilege" and that waiver was the "intentional or voluntary relinquishment of a known right, benefit or advantage. . . ."

" 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict.' [Cit.] Even 'slight' evidence was regarded as sufficient to prevent the devastations of a directed verdict, in *Worth v. Ga. Farm &c. Ins. Co.*, [174 Ga. App. 194 (330 SE2d 1) (1985)]. Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for the jury's resolution." *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 301 (3) (352 SE2d 185) (1986). The same standard applies when considering the denial of a j.n.o.v. *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106, 112 (1a) (372 SE2d 265) (1988), aff'd 259 Ga. 376 (382 SE2d 597) (1989); *Ostroff v. Coyner*, 187 Ga. App. 109, 115 (3b) (369 SE2d 298) (1988).

So viewed, the evidence was that Jones, a certified public accountant and small businessman, had, as a teenager, been admitted to Anneewakee Institute by his mother and had entered into sexual relations with Poetter, the director of the facility. This abuse occurred during the late 1960s and early 1970s. Jones was thereafter admitted to Georgia Tech where he started his business of renting appliances to

---

[1] I vigorously disagree with the dissent's implication that silence by a party in the face of a request for production triggers any duty on the part of the nonparty to object. The statute says "may" regarding the nonparty's obligation to object and "may" means "may," not "must."

students. When he was 19 or 20 years old, in 1973, Jones voluntarily returned to Anneewakee as a counselor for a couple of years. During this period, while a counselor, he again engaged in sexual activity with Poetter. He later worked for DHR, went to night school and obtained an MBA and passed the CPA exam. He practiced accounting from 1977 until 1982, as well as continuing to conduct his rental business. He did not reveal his earlier abuse to anyone nor did he seek any psychiatric or psychological treatment during this period. After 1982, he gave up his accounting practice to focus on his businesses.

He hired Smith for the rental business in 1985 and they mutually agreed to part ways in 1987. In December 1988, Smith sued Jones, contending that he was owed commissions and expense reimbursement. Attorney Bynum was counsel for Smith in that litigation and Jones was initially represented by counsel.

In late 1986 and 1987, the Anneewakee scandal began to surface, resulting in a criminal investigation conducted by the local authorities and the Georgia Bureau of Investigation. In connection with this investigation, Jones was interviewed by the GBI concerning his involvement. He denied any involvement with Poetter or any students under his care while he was a counselor. In early 1987, Jones contacted another attorney for the purpose of representing him in attempting to keep his name out of the criminal investigation. The attorney spoke to the local district attorney and was able to keep Jones from being subpoenaed to the grand jury or testifying in the criminal prosecution. Jones never admitted to the district attorney his involvement with Poetter. Because of his anxiety over the situation, his attorney recommended that Jones seek counseling. Although contacted concerning joining the civil suit against Anneewakee, Jones declined, again not wanting to become involved.

On March 5, 1987, in response to his attorney's suggestion, Jones went to Dr. Abel, a psychiatrist. During that visit, Jones requested that the doctor falsify an insurance claim, which Dr. Abel refused to do. Jones saw Dr. Abel again on March 17 and then not again until December 1987. During these 1987 visits, the concern expressed by Jones to Dr. Abel was that he would be charged in the prosecution because of his involvement with Poetter and his role as a counselor. He told Dr. Abel that he had engaged in inappropriate acts with male students as well as Poetter while he was a counselor. Dr. Abel's diagnosis at that time was major depression. From December 1987 until March 1989, Dr. Abel did not see Jones. On March 7, 1989, Jones returned to Dr. Abel. At that time, Dr. Abel involved Ms. Bachand, a nurse who did assertiveness training and behavior modification, to assist in the treatment of Jones regarding his inability to relate to women.

The treatment continued with Dr. Abel, who diagnosed Jones as

suffering from post-traumatic stress syndrome resulting from his involvement with the criminal investigation; major depression; paranoid personality; and dysthymia (lesser depression).

The Smith litigation continued in 1989 and Smith's attorney noticed Jones' deposition at least three times. Jones, whose attorneys withdrew from representing him in April 1989 because of a fee dispute, was representing himself.[2] Jones did not appear for his deposition and Smith's attorney obtained a court order directing that Jones appear for his deposition on September 1, 1989. Instead of appearing pursuant to this court order, Jones asked Dr. Abel to evaluate his psychiatric condition and determine if he should be subject to the deposition. In response, Dr. Abel wrote a letter dated September 1, 1989, showing as the addressee the trial judge in the Smith litigation, stating that Jones had been under his care for the past 18 months, "being treated for depression. This problem is ongoing and presently my patient is under extreme amounts of stress. It would be contraproductive for him to appear in court for a deposition at this time." Dr. Abel did not mail the letter, but handed it to Jones for his use.

Jones then went to the scheduled deposition and presented Dr. Abel's letter and a handwritten note from himself. The deposition was not taken. In response, on September 7, 1989, attorney Bynum served upon Dr. Abel the request for production of "[a]ny and all reports, notes, memoranda, correspondence, writings, documents, or physical tangible objects with respect to [Jones] which show: (a) Date or dates seen for treatment; (b) Diagnosis; and (c) Prognosis." Jones was served with a copy of the request and acknowledges that he received it in the mail on September 11 or 12, 1989. Jones attempted to reach Dr. Abel, was unsuccessful, and decided to wait until his next appointment to discuss the request.

On September 22, 1989, 15 days after receipt of the request and having received no contact from Jones concerning it, Dr. Abel forwarded to attorney Bynum 21 pages of his file, including notes of his and Bachand's conferences with Jones.

On October 10, 1989, 33 days after service of the request, Jones filed his pro se objection to the request, stating that the "[r]equest seeks information and documents which are not obtainable due to the psychiatrist-patient privilege. *Kimble v. Kimble*, 240 Ga. 100 (239 SE2d 676) (1977)."[3] Jones was aware that a party or the provider

---

[2] These attorneys filed a fourth mortgage against Jones' home and were attempting to foreclose on it and evict him from April 1989 until December 1989. Jones sued these attorneys, pro se, in July 1990, claiming they had failed to timely file a counterclaim against Smith alleging that his actions had ruined Jones' business.

[3] Even when communications are privileged, the *fact* of employment of and treatment by a psychiatrist is not privileged. *National Stop Smoking Clinic-Atlanta v. Dean*, 190 Ga. App. 289 (378 SE2d 901) (1989).

could object to the production of such privileged material, but believed that he had thirty days, plus three days added if pleadings are served by mail, in which to file his objection. OCGA § 9-11-34 (b) (2) provides that a written response is to be filed within 30 days after service, stating whether inspection will be permitted as requested "unless the request is objected to, in which event the reasons for objection shall be stated." Jones acknowledged that OCGA § 9-11-34 (c) (2), applying to a nonparty, states that "[i]f no objection is filed within ten days of the request, the nonparty shall promptly comply therewith."

Dr. Abel was aware that, pursuant to that section, the nonparty "may file an objection with the court" and that, if the nonparty received an objection from the party, he "shall not furnish the requested materials until further order of the court. . . ." Dr. Abel said it was his practice not to object unless the patient was incapable of objection due to mental illness or other reasons. He did not believe that Jones was so disabled, since Jones spent a good deal of his time in therapy discussing his numerous legal entanglements and his knowledge of the law.

Jones testified that, after filing his objection, which was done October 10, he visited attorney Bynum to discuss settlement of the Smith litigation. At that time, Jones expressed his displeasure to the attorney, stating that the request was harassment. Jones said Bynum advised him that his objection was untimely and that, in any event, he had already received copies of the records. Bynum testified that he recalled a telephone call with Jones after the objection was filed 33 days after the notice. During this call, he and Jones discussed whether the objection was required to be made thirteen or thirty-three days after the request and Jones seemed very proud of his knowledge of the somewhat obscure three-day-for-mail service rule.

Jones went to the office of Dr. Abel on October 18, 1989 to determine what had been released. He talked to Dr. Abel and, at his request, Dr. Abel called attorney Bynum and advised him that the records had been mistakenly forwarded. Dr. Abel also sent a letter to the attorney stating that he had "mistakenly advanced you some privileged information from my office." He requested the return of the files; that no copies be made; and that the contents of the documents not be discussed with anyone.

On October 19, 1989, Jones returned to Dr. Abel with an affidavit which Jones had drafted for the doctor's signature, again stating that the documents were privileged and "are not releasable." Jones told the doctor to meet him at federal court that afternoon at 4:00 p.m. to assist in obtaining a temporary restraining order regarding the return of the documents. Although Dr. Abel cleared his calendar in order to attend that hearing, he was later advised by Jones that he decided

not to do that.

On October 25, 1989, Dr. Abel received from Smith's attorney a letter dated October 24, "returning to you the original documents which you had previously provided. . . . The documents are the subject matter of an untimely objection filed pro se by [Jones]. We will allow the objection to be heard prior to requiring further compliance with the Request. . . ."

Attorney Bynum made one copy of the documents for his files. He placed them in an envelope and sealed it. They remained there until he received a discovery request from Jones in his suit against Dr. Abel. Bynum was deposed in this suit in February 1991. Prior to that, he did not show the copies to his client, Smith, or anyone else nor did he discuss their contents with anyone. Jones was not aware of anyone who had seen or heard about the contents of the file or his experience at Anneewakee, except his girl friend whom he married in 1990, whom he told after the documents were sent to attorney Bynum.

On October 26, 1989, Dr. Abel, again at Jones' request, wrote a second letter to attorney Bynum acknowledging receipt of the originals, again requesting that any copies be returned to him, that he advise if any copies had been made, and notifying the attorney and his client "not to communicate the contents of the documents to anyone, including from you to your client.' The attorney did not respond to this letter. Dr. Abel, that same day, wrote to the judge in the Smith litigation, explaining what had happened, and "recommend[ing] that a private, closed hearing be held immediately to consider an order to return all copies . . . and order all parties not to publicize or disclose the contents in any manner." A copy of his previously prepared affidavit was enclosed. No action was taken by Jones to pursue any such hearing.

Because of Jones' refusal to comply with the court's order regarding his deposition and in the absence of any protective order entered by the court, Smith's motion to strike Jones' defensive pleadings in that suit was granted.

Jones continued to be treated by Dr. Abel after these events, including visits of October 31, 1989, November 7, 1989, and November 16, 1989.

Jones testified that, after receipt of the request, he visited Bachand before meeting with Smith's attorney and gave her a copy of the request with a handwritten notation not to comply with it. Bachand remembered seeing something addressed to Jones, not Dr. Abel, which Jones gave to her and asked her to give to Dr. Abel. She could not remember the date.

Dr. Abel denied having any contact with Jones regarding compliance with the request before he forwarded the records. Dr. Abel

stated that, on July 11, 1989, Jones had an appointment with Bachand, after which Dr. Abel met with Bachand. Progress notes of this meeting reflect that Bachand met with Jones. Dr. Abel's note indicates that he discussed Jones with Bachand on that date. While not indicated in the medical notes, Dr. Abel recalled that Bachand did present him with a note from Jones attempting to entangle the doctor in his court case "in some way that was either illegal or unethical." He directed her to destroy the document and she did.

3. Pretermitting the question of whether, as a question of law, the privilege provided by OCGA § 24-9-21 (5) is ever subject to waiver or is an "absolute" privilege,[4] and accepting, without deciding, that Dr. Abel violated these legal prohibitions, Jones still has failed to show his entitlement to a directed verdict or j.n.o.v.

Dr. Abel presented expert testimony from Dr. Davis, a psychiatrist licensed to practice and practicing in Georgia. His testimony was that Dr. Abel's actions in responding to the request for production were in compliance with the standard of care in the psychiatric profession in Georgia in dealing with requests for production of records. It was his practice and that of the profession to wait 13 days after receipt of the request and, if no objection is received from the patient, to forward the records because it was his understanding that not to do so would break the law and the standard of care never required that. Dr. Davis had examined all of Dr. Abel's records and concluded that his treatment was in compliance with the standard of care and in no way contributed to Jones' condition.

Jones presented only the testimony of Dr. Rollins, a psychiatrist licensed in another state. He had never been served with a request for production under Georgia law and was unfamiliar with such a pro-

---

[4] That this issue is not clear cut is reflected by review of, e.g., *Emory Clinic v. Houston*, 258 Ga. 434 (369 SE2d 913) (1988); *Bobo v. State*, 256 Ga. 357, 358 (2) (349 SE2d 690) (1986); *Kimble v. Kimble*, supra; *McCord v. McCord*, 140 Ga. 170 (78 SE 833) (1913); *Dynin v. Hall*, 207 Ga. App. 337 (428 SE2d 89) (1993); *Mrozinski v. Pogue*, 205 Ga. App. 731 (423 SE2d 405) (1992); *Brown v. State*, 199 Ga. App. 188, 189 (1) (404 SE2d 469) (1991); *Freeman v. State*, 196 Ga. App. 343 (1) (396 SE2d 69) (1990); *Annandale &c. v. Weatherly*, 194 Ga. App. 803 (392 SE2d 27) (1990); *Gilmore v. State*, 175 Ga. App. 376 (333 SE2d 210) (1985); *Wilson v. Bonner*, 166 Ga. App. 9 (303 SE2d 134) (1983); *Atlantic Coast Line R. Co. v. Daugherty*, 111 Ga. App. 144 (1) (141 SE2d 112) (1965). Jones testified that he was aware that the privilege belonged to the patient and that only the patient could waive the privilege.

The dissent's position that there can never be discovery of communications between psychiatrist and patient would seem to leave the patient hamstrung in a malpractice claim against the psychiatrist. *Jacobsen v. Boyle*, 196 Ga. App. 411, 413 (397 SE2d 1) (1990) (evidence of abuse of transference phenomenon relevant in malpractice claim against psychologist); see *Roberts v. Greenway*, 233 Ga. 473, 477 (3) (211 SE2d 764) (1975) (habeas corpus petitioner cannot allege deprivation of constitutional rights and then invoke the shield of attorney-client privilege to prevent evaluation of the claim); *Peppers v. Balkcom*, 218 Ga. 749, 751 (d) (130 SE2d 709) (1963) (allegation of attorney's professional misconduct waived privilege).

ceeding. He had not examined Jones nor his records. His opinion, in response to a hypothetical question, was that disclosure was inappropriate when considered against the standard of care practiced by psychiatrists generally. He acknowledged that "[t]he patient can waive the privilege and sign permission and give that to the doctor."

"As to the physician [psychiatrist], the duty is that inherent in the doctor-patient relationship, which, if breached by failure to exercise the requisite degree of skill and care, with that failure being the proximate cause of the injury, will result in liability. OCGA § 51-1-27; [cits.]." *Brandvain*, supra at 112 (2).

Here, even assuming the duty of the doctor not to release the records under any circumstances and a breach of that duty, there was conflicting evidence as to whether Jones had suffered any harm attributable to the disclosure to the attorney. He contended that he was distracted from his business by this, but the evidence was that he was having severe cash flow problems before this happened and was already entangled in numerous lawsuits relating to former employees and other matters. He also contended that he was depressed by the release and suffered psychologically. The evidence of both Dr. Abel and Dr. Davis, however, was that he was suffering from major depression as a result of the Anneewakee investigation before the release of the documents. Therefore, the issue of proximate cause and damage to Jones were for the jury under these facts. Id. at 116 (3b).

4. Another issue precluding directed verdict or j.n.o.v. was that of the contributory negligence of Jones in not filing a timely objection to the request, which he was aware he could do, intended to do, but erroneously believed he had 33 days to do. This issue, again, was for the jury. Id. at 116 (3c).

5. There were serious conflicts as to facts, including the credibility of Dr. Abel and Jones with regard to these events, OCGA § 24-9-80, which precluded both a motion for directed verdict or a j.n.o.v.

*Judgment affirmed. Pope, C. J., Cooper and Smith, JJ., concur. Beasley, P. J., concurs in the judgment only. Birdsong, P. J., Mc-Murray, P. J., and Blackburn, J., dissent. Johnson, J., not participating.*

BIRDSONG, Presiding Judge, dissenting.

In spite of every safeguard the law has placed on privileged communications, although the law says a privilege is *absolute* and not subject to discovery, according to the majority, anybody can discover his legal adversary's secret information simply by sending a discovery request. In fact, anybody can likely discover anybody's secret information simply by filing a lawsuit on some grounds and then making a discovery demand under OCGA § 9-11-34. The person thus exposed dare not complain, or his lawyer or his psychiatrist, as the case may

be, will bring all his secret information to court and use it against him, either to confuse the court and the jury as to the law of privilege, or to discredit his former client or patient.

Under the majority's opinion, no person's private information is privileged. It is within the ordinary scope of discovery and the burden to keep it secret is on the confider. The counselor is under no duty to keep it secret when he receives a discovery request, if the patient or client files no objection with the court within ten days; and this is true *even if the client or patient specifically instructs the counselor not to release the information.*

According to the majority, no person's secret matter is privileged in the face of a discovery request by his adversary. The counselor is *compelled by law* to reveal his client or patient's most intimate, damaging secrets unless the confiding party, by filing an objection in court, acts to stop him. And although we presume the person who consults a lawyer or a psychiatrist or other counselor belabors under some physical, mental, emotional or legal disability or ignorance of the law, the majority's opinion puts the burden on the patient or the client to ensure the counselor keeps his secrets.

This was never in the minds of the legislature when it enacted OCGA § 9-11-34. So greatly did the legislature fear misimpression or abuse of certain privileges that it added a special subsection to the statute to *insure* the confidentiality of mental health patients, at least. To no avail, it seems.

The majority states that before considering the issue of the psychiatrist-patient privilege and the issues of discovery and waiver, the nature of Jones' claims against Dr. Abel must be kept in view, and then recites the claims at length, but I fail to see what a "view" of his claims has to do with whether OCGA § 9-11-34 includes privileged material within the scope of discovery of a third party. This "view" simply confuses the analysis. The majority then recites a mass of evidence in the case, revealing as well as possible all Jones' secret information, which confuses the analysis even more.

The majority has the idea that Jones made some sort of waiver. But OCGA § 9-11-34 *expressly*, by reference to OCGA § 9-11-26, states privileged material is not within the scope of discovery in the first place, and it *expressly* provides in subsection (d) that the statute does not breach the confidentiality of a mental health patient's records. So there can be no discovery of this material under the statute, and therefore no "waiver."

Jones sued psychiatrist Dr. Abel and his clinic for damages for disclosure of Jones' psychiatric records. He sought treatment in March 1987, from Dr. Abel in connection with having been abused at Anneewakee Institute when he was 15. Jones contends he felt shame and degradation about being sexually abused; he was deeply despon-

dent for fear of public disclosure and when Anneewakee Institute came under criminal investigation he sought psychiatric help. Then Jones' former employee sued him in a money dispute. In September 1989, the adversary's attorney sent Dr. Abel a request for production of documents to a nonparty under OCGA § 9-11-34 (c). Jones received the same request, took it to Dr. Abel's office and instructed Dr. Abel's employee not to provide any information.

Dr. Abel produced Jones' entire therapy file to the attorney. Dr. Abel executed an affidavit in October 1989, swearing that before he disclosed Jones' confidential records, Jones notified him not to do so; that the requested documents were privileged but by mistake Jones' entire therapy file was provided; that the papers were extremely confidential, were not related to the litigation, and contained communications of highly embarrassing events in which Jones was victimized.

After Jones filed this suit, however, Dr. Abel repudiated his own sworn affidavit and said he had relied on OCGA § 9-11-34 (c) (2) in giving Jones' private matter to Jones' adversary's attorney because Jones did not file an objection in ten days.

Defendants in opening argument to the jury revealed the embarrassing secrets and private feelings Jones had confided in Dr. Abel. They argued that before Jones consulted Dr. Abel he was severely psychiatrically damaged (and fully described the details); that his business was in trouble (and gave the details); and that when Jones was 15 he was involved in homosexual relationships at Anneewakee; that in March 1989, he was over $500,000 in debt; that this "successful" Georgia Tech businessman had a lot of problems; that he is very litigious; and on and on. In short, everything Jones had sought to keep private by confiding in his psychiatrist was revealed by the psychiatrist to the jury to justify his disclosure of those secrets to Jones' adversary in a lawsuit. It had very little relevance to the damages caused Jones by this revelation, *and none of it had any relevance to the question of privilege.*

Over objection, Dr. Abel's counsel was also allowed to argue the law to the jury. Defendants' lawyers were allowed to instruct the jury that OCGA § 9-11-34 provides that if a request for production of documents is sent to a doctor, the patient has ten days to object or the doctor must release the documents. This is not the law.

The trial court charged the jury that the law provides that either Dr. Abel or Jones could file an objection, and that the jury could find Jones waived his privilege. This is not the law. Jones was entitled to a directed verdict and a j.n.o.v. The legal errors, including allowing defendants' counsel to argue their imaginary version of OCGA § 9-11-34 to the jury, so infected the trial that this verdict should be reversed.

1. The psychiatrist-patient privilege given by OCGA § 24-9-21 (5) is "absolute, and [privileged matter] is not discoverable." *Atlantic*

*Coast Line R. Co. v. Daugherty,* 111 Ga. App. 144, 149 (141 SE2d 112). Discovery laws do not encroach on the privilege, for the *"[s]cope of discovery"* is expressly limited to matters *"not privileged."* (Emphasis supplied.) OCGA § 9-11-26 (b) (1).

OCGA § 9-11-34 (a) (1) on its face limits the scope of discovery of a nonparty to "matters within the scope of [OCGA § 9-11-26 (b)]," i.e., matters *not privileged.*

Nothing in OCGA § 9-11-34 (c) (2) puts the burden on the patient to object to a discovery request. Subsection (c) (2) provides: "The nonparty or any party may file an objection with the court." This means that if the patient does not object, the nonparty (doctor) may still object. If the doctor thinks he may violate his patient's privilege, he may object, and he should object. Therefore, the fact that Jones did not object to the request did not compel Dr. Abel to release any of Jones' records. Even Dr. Abel's failure to object did not compel him to release the records, for they were privileged *and not within the scope of discovery.*

Since *privileged material is not within the scope of discovery in the first place,* nothing, even a total failure to object, authorized Dr. Abel to release Jones' *privileged* records.

Therefore, on the face of OCGA § 9-11-34 (a) (1) and (c) (2), Dr. Abel could not reasonably or in good faith believe he was required to hand over his patient's privileged matter at a lawyer's discovery request. Ignorance of the law is no excuse for violating the law; it is presumed Dr. Abel knew the correct law. OCGA § 1-3-6; see *King v. Green,* 189 Ga. App. 105, 107 (375 SE2d 53); *Bowman v. State,* 186 Ga. App. 544 (2) (368 SE2d 143).

2. There is an independent reason this case should not have gone to trial. If the psychiatrist relied on OCGA § 9-11-34 (c) (2) as he says, he would have noticed this cynosure: subsection (d) provides: *"Confidentiality.* The provisions of this Code section shall not be deemed to repeal the confidentiality provided by Code Section [ ] 37-3-166 concerning mental illness." OCGA § 37-3-166 applies to private psychiatrists and clinics. See *Mrozinski v. Pogue,* 205 Ga. App. 731 (423 SE2d 405); *Annandale at Suwanee v. Weatherly,* 194 Ga. App. 803 (392 SE2d 27).

OCGA § 37-3-166 provides "no part of [a mental health patient's clinical records] shall be released except" in specified instances, none of which includes a discovery request by an attorney. Other than certain instances involving the patient's treatment, his "clinical records" (see OCGA § 37-3-1 (2)) may be released only: to an entity designated in writing by the patient or legal guardian (OCGA § 37-3-166 (2)); to the *patient's attorney* if the attorney requests and the patient consents (id. at (5)); or in response to a valid subpoena or court order, *"except for matters privileged under the laws of this state."* (Empha-

sis supplied.) Id. at (8).

The latter provision may mean these privileged records were not discoverable *even in the face of an order to compel discovery in a civil suit.* As to the "rare" instances in which a court order may override the privilege, see *Bobo v. State*, 256 Ga. 357, 360 (349 SE2d 690) and *Aetna Cas. &c. Co. v. Ridgeview Institute*, 194 Ga. App. 805, 806 (392 SE2d 286).

3. Defendants are not immune from suit under OCGA § 24-9-44, because Dr. Abel's release of Jones' records was not made "pursuant to laws requiring disclosure or pursuant to limited consent to disclosure."

4. As a matter of law Jones did not waive his privilege. No waiver can be inferred from failure to object to a discovery request because privileged material is *expressly* outside the scope of discovery in the first place. OCGA § 9-11-34 (c) (2) and (d). Further, psychiatrists are *expressly* excepted from OCGA § 24-9-40, which permits a physician to release information "on written authorization or other waiver by the patient" and which provides for waiver to the extent the patient places his treatment or injuries at issue in any civil or criminal proceeding. See *Wilson v. Bonner*, 166 Ga. App. 9, 17 (303 SE2d 134), citing OCGA § 24-9-40 as an affirmative adjuration.

5. I view it as unfortunate that this psychiatric patient was forced to pursue this litigation to protect his privilege because of Dr. Abel's insistence that he relied on law *which does not exist.* This trial was the more unwarranted because Dr. Abel's defense contradicted his sworn affidavit that he released the records accidentally. This trial and the verdict were the result of manufactured confusion about a statute as to which there is no room for debate, but as to which the trial court allowed defendants to argue to the jury their own version of it. The trial court should have granted appellant's motion in limine on waiver, and it should have recognized that privileged matter is *expressly* outside the scope of discovery. OCGA §§ 9-11-34 (a) (1) and (c); 9-11-26 (b). The jury should not have been allowed to entertain the psychiatrist's assertions that OCGA § 9-11-34 compelled him to send his patient's privileged files to an opposing attorney.

Moreover, it was prima facie unreasonable for Dr. Abel to assume his patient had no objection to the release of his most intimate communications to a party whose interests, as Dr. Abel knew, were inconsistent with his patient's interests.

Dr. Abel's violation of his duty to protect Jones' privacy gives right to damages. *Orr v. Sievert*, 162 Ga. App. 677 (292 SE2d 548); see *Roberts v. Chaple*, 187 Ga. App. 123 (369 SE2d 482). The majority's assertion that there was conflicting evidence as to whether Jones was harmed by these disclosures is beside the point: he was entitled to a verdict and j.n.o.v. as to liability.

I would reverse the judgment of the trial court.

I am authorized to state that Presiding Judge McMurray and Judge Blackburn join in this dissent.

DECIDED JULY 16, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

John Jones, *pro se.*

*Sullivan, Hall, Booth & Smith, John E. Hall, Jr., Roger S. Sumrall,* for appellees.