A96A0968. GAINESVILLE ASPHALT, INC. v. MERRITT CONTRACTING, INC.
(479 SE2d 359)

BIRDSONG, Presiding Judge.

These are the remains of a construction project gone bad. The parties on appeal are the contractor, Gainesville Asphalt, Inc. (appellant), and subcontractor, Merritt Contracting Company, Inc. (appellee). The construction contract was entered in September 1990 with the owner, Road Atlanta Technologies, Inc. Construction commenced and was mostly completed by November 1990. In November 1990, the owner wrote a progress payment check to Gainesville Asphalt for $250,249.50. In reliance thereon, on the same day Gainesville Asphalt wrote a check to Merritt for $247,957.80. The owner's check to Gainesville Asphalt bounced, but Gainesville Asphalt's check to Merritt did not bounce. The owner defaulted, and in May 1991 the City of Gainesville entered a contract with Gainesville Asphalt and Merritt providing for advancement of funds to complete the project. Gainesville Asphalt and Merritt were sued by the City of Gainesville for declaratory relief as to the money Gainesville Asphalt won from the original owner and its principals.

At issue in this appeal is the effect of the contract entered by the parties after the owner defaulted and after Gainesville Asphalt sued the owner. The May 1991 contract was entered to induce Gainesville Asphalt and Merritt to complete the project in return for loans from the City. The contract provides for repayment of the loans, gives the City a percentage interest in Gainesville Asphalt's recovery from the owner, and gives Merritt an 11.5 percent share of such recovery under $500,000. Gainesville Asphalt won a consent judgment against Road Atlanta and its principals for more than $600,000 but recovered only $245,515. The City sued Gainesville Asphalt and Merritt for declaratory relief under the May 1991 contract. Merritt filed a cross-claim against Gainesville Asphalt for sums due under that contract, attaching a letter from Gainesville Asphalt's attorney saying: "[The reason Gainesville Asphalt] has not paid [Merritt] any percentages of [Gainesville Asphalt's recovery from Road Atlanta] should be no mystery to anybody. [Gainesville Asphalt paid Merritt] in late 1990 based on the bad check [Gainesville Asphalt] got from [Road Atlanta]; that started this whole mess. That, plus what [Merritt] got

from the City, just about took care of [Merritt. If Merritt returns the $247,957.80, Gainesville Asphalt] will immediately pay the percentages to [Merritt]. . . . [Gainesville Asphalt] doesn't intend to pay [Merritt] anything until [Gainesville Asphalt] recovers the [$247,957.80 it paid to Merritt in November 1990]."

Gainesville Asphalt filed a cross-claim against Merritt asserting that its original contract required Gainesville Asphalt to pay Merritt "when paid," that is, "within ten (10) days after receipt by Gainesville Asphalt, Inc. of payments from [the owner]" and that since Gainesville Asphalt was never paid, Merritt was not entitled to be paid. Merritt says Gainesville Asphalt never raised such a claim and any such claim was novated by the May 1991 contract, which gave Merritt a percentage (without set-off) of Gainesville Asphalt's recovery from Road Atlanta and made no mention of Road Atlanta's bad check. Further, according to Merritt, no claim was made then by Gainesville Asphalt that Merritt should repay money paid by Gainesville Asphalt in reliance on the owner's bad check or that Merritt was not entitled to that money.

The trial court gave judgment to both Gainesville Asphalt and Merritt Contracting on their cross-claims, resulting in a net judgment in favor of Gainesville Asphalt and against Merritt in the amount of $224,611.08. Merritt filed a motion for a new trial, saying that since the May 1991 contract gave Merritt 11.5 percent of Gainesville Asphalt's recovery from the owner and did not mention the November 1990 progress payment to Merritt which Gainesville Asphalt now says it has a right to recoup, the May 1991 contract extinguished any claim of Gainesville Asphalt to the payment. The trial court granted Merritt's motion for new trial. A jury awarded $13,346.72 to Merritt and nothing to Gainesville Asphalt.

Gainesville Asphalt argues that if Merritt keeps this payment and recovers a percentage under the May 1991 agreement, it will be paid twice.

On appeal, Gainesville Asphalt contends the trial court could not grant a new trial after a non-jury trial or set aside its own judgment; and that the trial court gave an improper verdict form to the jury, erroneously charged on accord and satisfaction, wrongly admitted evidence of other transactions between the parties, failed to charge that an ambiguous contract is construed most strongly against the drafter, and wrongly denied Gainesville Asphalt's motions for summary judgment and new trial. *Held*:

1. The trial court did not err procedurally in declaring a new (jury) trial after giving a judgment following a non-jury trial. Gainesville Asphalt contends the trial court's original judgment was a judgment of law only, that it was purely a legal conclusion and that there were no factual questions decided therein, and that it therefore was

not subject to the grant of new trial. See *O'Neal v. Winn-Dixie of Atlanta*, 195 Ga. App. 409 (393 SE2d 473); *Sunn v. Mercury Marine*, 166 Ga. App. 567 (305 SE2d 6); *Sands v. Lamar Properties*, 159 Ga. App. 718 (285 SE2d 24); see also OCGA § 9-11-60 (d); *First Baptist Church &c. v. King*, 208 Ga. App. 250, 251 (430 SE2d 635). We disagree. As shown below, the trial court's original judgment involved findings of fact; it was based upon evidence and not solely upon a legal question. The trial court's retraction of its original judgment and its decision to submit the case to the jury is proof of that fact and was proper. See *Sunn*, supra.

2. In view of our holding in Division 3, the remainder of Gainesville Asphalt's enumerations of error are without merit. There was no ambiguity in the contract terms, as held in Division 3, and therefore a charge that a contract is construed most strongly against the drafter was not authorized. See *Hunsinger v. Lockheed Corp.*, 192 Ga. App. 781, 784 (1) (386 SE2d 537). Even if there was no evidence of accord and satisfaction to authorize such a jury charge, the charge was harmless error in view of the fact that the jury's finding was the only reasonable finding under the evidence (see Division 3 hereinafter) and the charge therefore could not have affected the verdict. See *Davis v. Davis*, 211 Ga. 714, 716 (88 SE2d 377); *Davenport Bros. v. Pepper*, 108 Ga. App. 372, 373 (133 SE2d 54). Further, appellant has no grounds to complain of the verdict form, since that form worked to appellant's benefit. The admission of evidence that Gainesville Asphalt might have owed Merritt some money in other transactions was not harmful error, because the only reasonable conclusion in this case, based on the contract and other competent evidence, is that if Gainesville Asphalt intended to claim a set-off on the 11.5 percent it agreed to pay Merritt in the May 1991 contract, it would have so stated in the contract.

3. In November 1990, the check paid by the owner to Gainesville Asphalt was dishonored although the check paid by Gainesville Asphalt to the subcontractor was not. Gainesville Asphalt's principal had to cover that check, and Gainesville Asphalt sued the owner on account of that bad check and on account of the owner's general default on the project. The May 1991 contract entered into by the parties for completion of the project specifically and in great detail set forth the parties' anticipated sharing of any recovery by Gainesville Asphalt against the defaulted owner. The contracts, the record and the evidence show that the contractual relations and financial arrangements between Gainesville Asphalt and Merritt Contracting, and, later, the City of Gainesville and a bank, were complex. Neither party makes it absolutely clear on appeal whether Merritt Contracting was in fact "paid twice" by the jury's award to Merritt of an amount within the 11.5 percent to which Merritt was entitled by the

May 1991 contract and by the jury's refusal to award Gainesville Asphalt anything for the $247,957.80 it advanced Merritt in misplaced reliance on the owner's check. In any case, neither party makes it clear whether Gainesville Asphalt even protested to anybody before the May 1991 contract was entered that it expected a set-off or recoupment of any kind for the amount of that bad check. There is therefore no basis to assume that Merritt was "paid twice," or if it was, that the scheme giving Merritt a percentage of Gainesville Asphalt's recovery against Road Atlanta as written into the May 1991 contract was not accepted by both parties as the full resolution to such problem.

Gainesville Asphalt contends Merritt was not entitled to keep the $247,957.80 which Gainesville Asphalt paid Merritt in November 1990 in reliance on the owner's check because the parties' contract was a "pay when paid" contract and Gainesville Asphalt was never "paid" by the owner. This argument falls short of the mark. The May 1991 new contract was entered by the parties *because* the owner had defaulted and after Gainesville Asphalt had sued the owner for the bounced check; and the May 1991 contract was plainly intended to cover the liability and rights of all the parties as to any recovery, including the owner's bounced check, which might arise as the result of that suit (including any recovery by Gainesville Asphalt on the owner's bounced check).

Gainesville Asphalt argues that the May 1991 contract did not extinguish its right to recoup this money. See *Derosa v. Shiah*, 205 Ga. App. 106 (421 SE2d 718). Gainesville Asphalt further argues that evidence relied on to prove waiver must be so clearly indicative of an intent to relinquish a then-known right or benefit as to exclude any other reasonable explanation. *D. I. Corbett Elec. v. Venture Constr. Co.*, 140 Ga. App. 586 (231 SE2d 536); see *Jones v. Abel*, 209 Ga. App. 889 (434 SE2d 822). However, these authorities merely prove that in the circumstances of this May 1991 contract, which is exhaustive on every point including giving Merritt a certain percentage of Gainesville Asphalt's recovery from the owner, if Gainesville Asphalt intended to assert any right to recoup $247,957.80 from Merritt, it would not have agreed to pay Merritt at least 11.5 percent of its recovery from Gainesville Asphalt *without set-off*. It cannot be supposed that in drawing up this extensively constructed contract — which was based entirely on the owner's default and Gainesville Asphalt's suit for that default — the parties would not have considered and reconciled within the terms of the contract such an important matter as the fact that allegedly Gainesville Asphalt's payment to Merritt in November 1990 of $247,957.80 was made in reliance on that dishonored check payment from the owner. In its argument as to the trial court's charge on accord and satisfaction, Gainesville

Asphalt itself admits, *"The evidence clearly showed that no dispute existed at the time of the execution of the May [1991] agreement."* (Emphasis supplied.) This admission proves that when Gainesville Asphalt agreed to pay Merritt 11.5 percent of its recovery from the owner *without set-off*, there was no dispute between Gainesville Asphalt and Merritt Contracting concerning the money paid to Merritt by Gainesville Asphalt, or that this agreement extinguished any "dispute."

Since we decline to ascribe to Gainesville Asphalt the secret intent to induce Merritt to enter the May 1991 contract and make certain promises to pay Merritt without even mentioning Merritt's supposed debt to it of $247,957.80, while never intending to honor those promises to pay Merritt, we see no other "reasonable explanation" (*D. I. Corbett Elec.*, supra) of the May 1991 contract and its terms except that when it executed the contract, Gainesville Asphalt did not then intend to seek a set-off in the amount of $247,957.80 and did not believe it had a claim to recoup that $247,957.80, and clearly waived any such claim. *Jones*, supra. The admission in evidence of the parties' other transactions cannot alter this view, and was at best harmless error, since whatever the evidence, on the face of the undisputed facts surrounding the making of this May 1991 contract and based on its unambiguous contents, there is no other reasonable conclusion than the one the jury made, and its verdict was demanded by all the evidence and charges, even those which may have been erroneously admitted or given. *Davis v. Davis*, supra. It follows that the trial court could not have erred in denying summary judgment to Gainesville Asphalt and correctly denied a new trial.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED OCTOBER 23, 1996 —
RECONSIDERATION DENIED DECEMBER 9, 1996 —

Carey, Jarrard & Walker, R. Thomas Jarrard, Theodore W. Robinson, for appellant.

Stewart, Melvin & Frost, J. Douglas Stewart, Joe B. Sartain, Jr., for appellee.