593 S.E.2d 924 (2004)
265 Ga. App. 412
In the Interest of M. E., A Child.
No. A04A0663.
Court of Appeals of Georgia.
February 3, 2004.
*926 John D. Rasnick, Manchester, for appellant.
Thurbert E. Baker, Atty. Gen., Shalen S. Nelson, Laura W. Hyman, Asst. Attys. Gen., Daniel, Hadden & Alford, Peter T. Alford, James T. Hunnicutt, Atlanta, for appellee.
*925 ELDRIDGE, Judge.
On July 2, 2002, the Troup County Department of Family and Children Services ("DFCS") filed a deprivation petition in the Juvenile Court of Troup County against the unmarried parents and joint custodians[1] of the minor female child, M.E. (the "child"), then age two, averring that the child was deprived and requesting that she be placed in DFCS's temporary protective custody. The father filed his verified petition for change of custody in the county's superior court two weeks later, requesting that physical custody of the child be transferred to him upon the claim that the child's mother was unfit. After multiple hearings, the juvenile court found the child to be deprived and transferred temporary custody of the child to the father.
The child's mother appeals from the order of the juvenile court, contending: (1) that the juvenile court erred in finding that she deprived the child; (2) that the juvenile court erred in "awarding" physical custody of the child to the father; and (3) that the juvenile court erred in ordering the parents to refrain from subjecting the child to further examinations for sexual abuse absent the involvement of a law enforcement investigator. Through new counsel on appeal, the mother also contends: (4) that she received ineffective assistance *927 of counsel; (5) that the court erred in allowing the father's attorney to "testify" during the hearings; (6) that the court erred in allowing the father to impeach her character by evidence of her criminal history; (7) that the court erred in admitting evidence of the father's polygraph test result; and (8) that the court erred in considering privileged information. The juvenile court's finding as to custody was in the nature of a recommendation to the superior court.[2] As such the custody issue remains pending below and is not before this Court on appeal. OCGA § 5-6-34(a); Stallings v. Chance, 239 Ga. 567, 238 S.E.2d 327 (1977). Finding the child deprived, and the remaining enumerations of error to be without merit, we affirm.
On March 25, 2001, nine days after the superior court awarded the parents joint legal custody of the child upon granting the father's legitimation petition, the mother took the child to the emergency room, complaining that the child was screaming and crying after visiting her father. The mother asked that the child be examined for signs of physical or sexual abuse. The treating physician found no evidence of abuse and diagnosed the child with throat and ear infections.
On May 2, 2001, the mother again presented the child to an emergency room, indicating that the child was uncontrollable and did not want to be held. After examining the child, a physician treated her for an earache. The following day, the mother took the child to be examined by her pediatrician, Dr. Lisa Allardice. Dr. Allardice noted that the child had a small rectal tear, redness on her buttocks, and a bruise on her left inner thigh. Dr. Allardice concluded that these findings were consistent with possible sexual abuse and referred the child to Dr. Rendell Alexander, Director of the Center for Child Abuse at the Morehouse School of Medicine.
Upon seeing the child on May 7, 2001, Dr. Alexander concluded that the child's genitals and rectum were normal and that the redness which Dr. Allardice observed might be the result of poor hygiene.
On December 2, 2001, the mother returned the child to an emergency room where she reported observing a crumbly white substance in the child's diaper and a discharge from her rectumthis after the child returned from another visit with her father. The mother also claimed that the child said, "Daddy's mean." Rape kit swabs taken were negative for semen, and laboratory testing showed that the white substance in the child's diaper was talcum powder.
The next day, the mother took the child to Dr. Allardice's office once more and reported that the child screamed when people tried to touch or hold her. Dr. Allardice found no physical evidence of sexual abuse; however, the child told her that "Daddy's mean" and that "Daddy touch," statements which Dr. Allardice advised DFCS were consistent with genital contact.
Eight days after the foregoing visit to Dr. Allardice, the mother took the child back to Dr. Alexander for another forensic genital examination. Dr. Alexander noted no abnormality in the child's genital or rectal area.
On May 2, 2002, the mother took the child to Dr. Allardice's office again. The mother reported that the child had complained that her bottom hurt and indicated that there was a vaginal discharge. There the child climbed onto the examination table, spread her legs, and said, "Daddy hurt me, my `[g]ina' [sic]." Asked by the doctor where and how she hurt, the child patted her genital area and put a doll's face to her genitals. Dr. Allardice observed some vaginal redness during this examination.
On June 16, 2002, the mother again took the child to the emergency room, alleging possible sexual abuse. The mother reported observing scratches, bumps, and redness on the child's genitals and claimed that the child had complained that the father "tickled me," putting her fingers on her vaginal area. The examining physician diagnosed the child as healthy and found no evidence of external injury or trauma.
*928 On June 17 and June 18, 2002, the mother took the child for two additional medical examinations for sexual abuse. On June 17, Dr. Allardice found superficial scratches in the child's vaginal area, these consistent with possible sexual abuse. On June 18, Dr. Suzanne Schluesser, a second pediatrician, observed only minor redness on the child's vagina. Asked if her father had tickled her, the child told Dr. Schluesser that he had and pointed to her buttocks and genitals. Dr. Schluesser's examination of the child for sexual abuse, however, was negative.
In extensive testimony before the juvenile court, Dr. Allardice opined that the anal tears and redness she observed on the child in May 2002 might have been the result of constipation, bubble baths, and riding toys. As to the superficial anal scratches she noted on the child in June 2002, she testified that these could result if a child wiped vigorously during potty training or passed a hard stool while constipated.[3] Moreover, although she testified that she believed "someone had manipulated the genital area of this child[,]" she conceded that Dr. Alexander was more knowledgeable than she and further indicated that she agreed with his findings. Dr. Alexander could neither confirm nor negate the allegations of sexual abuse against the child.
In other testimony, Dr. Susan Campbell, a licensed psychologist specializing in forensic evaluations of alleged child abuse, testified that the mother contacted her in February 2002 to request a consultation for behavioral problems in the childthese associated with visits to the father. Dr. Campbell reported that the child tested in the normal range for sexual abuse. A DFCS investigator testified that she had been unable to substantiate any claim of sexual abuse against the child. Two criminal investigators did likewise. One of these opined that the mother had done something to the child in order to facilitate an accusation against the father. Assistant District Attorneys Monique Kirby and Nigel Lush testified that they had investigated the mother's claims of sexual abuse against the child by the father and found insufficient evidence to prove that the child had been abused. ADA Kirby further testified that she believed the mother to be motivated by a fixation of sexual abuse against the child by the father.
Testimony concerning the mother's mental health indicated that the mother suffered from major depression, generalized anxiety, and borderline personality disorders; that the mother had twice attempted suicide; that she had been receiving mental health treatment since her second suicide attempt in April 1998; that the child might be at risk if the mother were noncompliant with her medications; that the mother had difficulty in controlling her anger, this manifested by verbal attacks against the father and his family as well as screaming and cursing in the presence of the child causing the child emotional harm; and that the mother was obsessed with the child, leading her to resist the involvement of others in the child's life, including DFCS in providing services to the child.[4]
Other evidence established that the mother had a criminal history, including a 2001 incident in which she caused an overpayment of public assistance,[5] and an arrest for criminal trespass upon disrupting a family party at the father's house in July 2002; that the mother was unemployed and receiving financial assistance from a boyfriend, her parents, and the father; that the child told her paternal grandmother that the mother had her say, "Daddy do it"; in testimony corroborated by the child's paternal grandmother, that all the father's visits with the child had been supervised by the father's mother or the child's mother and that the father had not *929 changed the child's diapers during such visits because of the allegations against him; that the court-appointed special advocates for the child believed the mother to be a flight risk, a danger to the child for her mental health problems, and recommended that DFCS be given temporary custody of the child; and that the child's guardian ad litem recommended that the court award temporary legal custody of the child to DFCS, expressing the view that the child was deprived. Held:
1. The mother contends that the juvenile court erred in finding the child deprived in that there is no clear and convincing evidence of deprivation; however, she does not support her claim that the juvenile court erred in finding the child deprived by citation of authority or meaningful argument. While we are at liberty to treat such an enumeration of error as abandoned, Court of Appeals Rule 27(c)(2), we elect not to do so in light of the gravity of the juvenile court's decision to transfer temporary legal custody of the child to the father upon finding the child deprived in the mother's care. OCGA § 15-11-55(a)(2); In re D.H., 178 Ga.App. 119, 124, 342 S.E.2d 367 (1986).
A child is deprived under Georgia law if the child is without proper parental care or control, subsistence, education, as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals. OCGA § 15-11-2(8)(A).
It has been held that to authorize a termination of parental rights, or even a loss of temporary custody by [the] child's parents, on the basis of deprivation, the deprivation must be shown to have resulted from unfitness on the part of the parent, that is, either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child. [Cits.]
In re D.H., supra. In determining whether a child is deprived, "it is the child's welfare and not who is responsible for the conditions which amount to deprivation that is the issue." (Citation and punctuation omitted.) In the Interest of J.P., 267 Ga. 492, 480 S.E.2d 8 (1997). On appeal, we review a finding of child deprivation challenged as supported by insufficient evidence to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. In the Interest of M.L.C., 249 Ga.App. 435, 436(2), 548 S.E.2d 137 (2001). Among the factors a juvenile court properly considers in determining a child to be deprived is whether the parent possesses a medically verifiable mental or emotional deficiency of such nature or duration as to render the parent unable to provide for the child's needs adequately. OCGA § 15-11-94(b)(4)(B)(i). Also relevant to a juvenile court's deprivation determination is egregious conduct of the parent toward the child or toward another child of a physically, emotionally, or sexually cruel or abusive nature. OCGA § 15-11-94(b)(4)(B)(iv).
So viewed, the record shows that in a twenty-month period the mother took the child to a hospital or a doctor's office in excess of ten times with allegations of sexual abuse against the father. Notwithstanding the mother's extensive efforts to convince authorities that the father had sexually abused the child, numerous doctors, a child protective service investigator, two sheriff's deputies, and two assistant district attorneys concluded that there was no evidence of sexual abuse. Moreover, there was testimony that the mother was fixated on the idea that the father had sexually abused the child and might have coached her to say that her father had acted inappropriately; that the mother might actually have done something to the child to prove her allegations; that the mother had emotionally abused the child by failing to control her anger concerning the father and his family in the child's presence; that the mother was and had been receiving treatment for extreme depression; that the mother had twice attempted suicide; that the mother's allegations of sexual abuse against the father were vindictive in nature; and that these would likely continue, subjecting the child to further medical examinations for sexual abuse.
Although that aspect of this case involving the apparent use of a child to block or impair court-ordered visitation is one of first impression, *930 there was clear and convincing evidence upon which a rational trier of fact could have found such conduct egregious, and such evidence was properly considered by the juvenile court in reaching its deprivation finding. OCGA § 15-11-94(b)(4)(B)(iv). There also was clear and convincing evidence authorizing a rational trier of fact to find the child deprived upon the lack of mental ability in the mother to provide the child necessary care. OCGA § 15-11-94(b)(4)(B)(i); see Jones v. Dept. of Human Resources, 155 Ga.App. 371(1), 271 S.E.2d 27 (1980) (deprivation finding may be predicated upon mental inability in the parent).
On appeal, "`[t]his Court neither weighs [the] evidence nor determines the credibility of witnesses; rather, [it] defer[s] to the trial court's factfinding and affirm[s] unless the appellate standard [has] not [been] met.' [Cit.]" In the Interest of C. S., 236 Ga.App. 312, 314(1), 511 S.E.2d 895 (1999). Inasmuch as there here was clear and convincing evidence sufficient to authorize a rational trier of fact to find deprivation, the juvenile court here did not err in finding the child deprived. See In re D.H., supra (deprivation established upon parental unfitness, intentional or unintentional misconduct resulting in the abuse or neglect of the child, or by what is tantamount to physical or mental incapability to care for the child); In the Interest of M.L.C., supra (child deprivation challenged as supported by insufficient evidence reviewed to determine whether any rational trier of fact could have found deprivation by clear and convincing evidence).
2. The mother challenges the juvenile court's order requiring that law enforcement authorities be contacted as a condition precedent to any further medical examination of the child for sexual abuse at the instance of either parent. A juvenile court judge is vested with broad powers of disposition upon finding a child to be deprived. OCGA § 15-11-55; In re D.H., supra. In the absence of an abuse of discretion, a juvenile court's finding of deprivation and its disposition thereof will not be disturbed on appeal. Id.
There was evidence in the record showing that the child had been subjected to numerous medical examinations for sexual abuse at the mother's behest in an apparent effort to frustrate or foreclose the father's right of visitation; that the mother would persist in having the child examined for possible sexual abuse; and that such examinations had been so numerous as to be psychologically harmful to the child. Accordingly, the juvenile court did not abuse its discretion in limiting the circumstances under which future such examinations might proceed.
3. Through new counsel on appeal, the mother contends that her trial counsel provided ineffective assistance of counsel and that her appeal must be remanded to the trial court. However, because the mother's ineffectiveness claims may be decided as a matter of law on the existing record, remand to the juvenile court is unnecessary. Gomillion v. State, 236 Ga.App. 14, 15(1), 512 S.E.2d 640 (1999).
To the extent the mother has not abandoned the instant claim of error for the absence of citation of authority or reasoned argument, Court of Appeals Rule 27(c)(2), she challenges the effectiveness of her trial attorney in that without objection he: (1) allowed the father's attorney to "testify" at trial by questions on cross-examination propounded to the mother's psychologist, Dr. Campbell; (2) allowed cross-examination as to her criminal arrests in evidence, improperly placing her character in issue; (3) allowed the results of the father's polygraph test in evidence; (4) allowed information privileged under the psychologist-patient privilege in evidence; and (5) allowed cross-examination of the mother as to her mental health.
While termination of parental rights cases are more civil in nature than criminal, parents facing termination of their rights have been afforded some of the protections to which criminal defendants are entitled. See e.g., Nix v. Dept. of Human Resources, 236 Ga. 794, 796, 225 S.E.2d 306 (1976) (indigent parent has right to appointed counsel). In the Interest of S.M. L., 228 Ga.App. 81, 83(4)(a), 491 S.E.2d 186 (1997). With regard to the right to counsel, OCGA § 15-11-98(b) provides that if the parent or parents of the child desire to *931 be represented ... but are indigent, the court shall appoint an attorney for such parent or parents. Moreover, the Supreme Court, citing former Ga.Code Ann. §§ 24A-1701 (d) and 24A-2001(a) (currently OCGA §§ 15-11-39(d) and 15-11-6(b), has held that it is thus quite evident that the entire legislative scheme written into the pertinent provisions of the Juvenile Code was intended to provide to an indigent parent effective representation at all stages of any proceeding involving the termination of that parent's right to his or her child.
(Citation and punctuation omitted.) In the Interest of A.H. P., 232 Ga.App. 330, 334(2), 500 S.E.2d 418 (1998). Consequently, "the mother was entitled to effective representation." Id.; see, e.g., In the Interest of A.L. E., 248 Ga.App. 213, 219(4), 546 S.E.2d 319 (2001); Cain v. Dept. of Human Resources, 166 Ga.App. 801, 803(4), 305 S.E.2d 492 (1983).
The proper standard to be employed in deciding enumerations of error as to ineffective assistance of counsel, whether based on a claim of right arising under federal or state law, is the two-prong test announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different.
(Citation and punctuation omitted.) Gomillion v. State, supra at 16(3), 512 S.E.2d 640.
(a) Trial counsel's performance was not deficient for the failure to object to the cross-examination propounded by the father's attorney as amounting to impermissible testimony, i.e., that the father's attorney asked Dr. Campbell whether the mother had told her of the mother's office call to him in which she stated that her claims against the father had been fabricated and that the father's attorney later asked her if the child's claim of sexual abuse by the father was suspicious as videotaped[6] by the prosecutors who later concluded that the child's allegations of sexual abuse were unfounded.
While in the first instance there was no direct evidence of any admission of fabrication by the mother, cross-examination is proper as relevant to matters in issue as well as to matters elicited on direct. James v. State, 260 Ga.App. 536, 537, 580 S.E.2d 334 (2003). Likewise, the father's counsel did not improperly cross-examine Dr. Campbell as to whether she believed the child's videotaped claim of sexual abuse to be credible. A witness may give an opinion on facts stated hypothetically in a question even though such facts are offered by or through other witnesses. Taylor v. Warren, 175 Ga. 800, 801(2), 166 S.E. 225 (1932). The father's attorney did no more than that in describing the allegation of the child as it was videotaped and later admitted in evidence without objection. Inasmuch as there was no error for the cross-examination complained of, trial counsel was not ineffective because he failed to object to it. Bagwell v. State, 270 Ga. 175, 176(1), 508 S.E.2d 385 (1998). The failure to make a meritless objection cannot be evidence of ineffective assistance of counsel. Demetrios v. State, 246 Ga.App. 506, 514(7)(b), 541 S.E.2d 83 (2000).
(b) Neither was trial counsel's performance ineffective for failure to object to cross-examination of the father's counsel seeking to impeach the mother with evidence of her criminal arrests.[7] Pretermitting *932 whether such cross-examination was improper, there is no evidence of prejudice in that the juvenile court heard the case sitting alone, see Sprayberry v. Dougherty County, 273 Ga. 503, 504(2), 543 S.E.2d 29 (2001) (court proceedings presumed regularly and legally conducted), and predicated its deprivation finding on the mother's mental health and egregious conduct as a parent in subjecting the child to repeated medical examinations for sexual abuse, not her lack of credibility for a criminal record. The mother thus having failed to meet her burden under the second prong of Strickland, the failure to object to cross-examination as to the mother's criminal history was not ineffective even if deemed deficient. Bagwell v. State, supra; Demetrios v. State, supra.
(c) The mother's claims to the contrary notwithstanding on appeal, the results of the father's polygraph test were admitted upon the stipulation of the parties at trial. Consequently, the results of such polygraph test were admissible. Lockett v. State, 258 Ga.App. 178, 180-181(2), 573 S.E.2d 437 (2002). The results of the father's polygraph examination as admissible, no ineffectiveness obtained for failure to object to their admissibility. Bagwell v. State, supra; Demetrios v. State, supra.
(d) The mother asserts that trial counsel erred by failing to object to the admission in evidence of behavioral checklists she completed on the child's behalf upon consulting psychologist Dr. Campbell concerning the childsuch checklists as privileged information under the psychologist-patient privilege. OCGA §§ 24-9-21(6); 43-39-16. That the child, rather than the mother, was Dr. Campbell's patient in the circumstances of this case and the communication in issue as between the mother and the psychologist, no error obtained on the basis of privilege upon the admission in evidence of the complained-of checklists. Because the checklists thus were properly admitted in evidence, trial counsel's performance was not deficient for the failure to object to their admissibility. Bagwell v. State, supra; Demetrios v. State, supra.
(e) The record shows that the mother waived the psychologist-patient privilege concerning her current mental health treatment under OCGA § 24-9-21(6). Erroneously, the mother contends that the juvenile court refused her an opportunity to consult with counsel, notwithstanding a ten-minute recess taken by the juvenile court at trial for such purpose. If voluntary, the patient may expressly or impliedly waive the psychologist-patient privilege. Kennestone Hosp. v. Hopson, 273 Ga. 145, 148, 538 S.E.2d 742 (2000); see also McCord v. McCord, 140 Ga. 170, 174(2), 78 S.E. 833 (1913) (confidential communications under OCGA § 24-9-21 subject to waiver). Waiver here as express and voluntary, no error resulted upon questioning of the father's attorney eliciting evidence of the mother's mental health. A fortiori, there was no deficient performance of counsel for the failure to object to such questioning. Bagwell v. State, supra; Demetrios v. State, supra.
4. In light of our disposition of Division 3, supra, we need not address the mother's remaining claims of error.
Judgment affirmed.
RUFFIN, P.J., and ADAMS, J., concur.
NOTES
[1] On March 16, 2001, the superior court granted the father's petition to legitimate the child. In doing so, the superior court awarded the parents joint legal custody of the child with primary custody in the mother.
[2] Upon hearing the evidence presented on the father's petition for change of custody, the superior court transferred the matter to the juvenile court with direction that it report back its findings and recommendations under OCGA § 15-11-5 et seq.
[3] On cross-examination, the mother testified that the child had several riding toys and occasionally experienced hard stools. The child's paternal grandmother testified that the child periodically was constipated causing painful bowel movements.
[4] DFCS elected not to include in its case plan a requirement that the child be enrolled in day care for the purpose of acquiring socialization skills because the mother objected.
[5] Police Detective Eric Lohr told the court that he charged the mother with making false statements in May 1998, after she damaged her own car and blamed someone else.
[6] In asking his question of Dr. Campbell, the father's counsel described when and how the child reported that she had been sexually abused by the father in the videotaped interview.
[7] The juvenile court sustained trial counsel's objection to the father's attorney's attempt to introduce a copy of a criminal accusation against the mother.