A09A1357. IN THE INTEREST OF S. K. et al., children.
(686 SE2d 814)

BARNES, Judge.

The mother of S. K. and A. K. appeals the Juvenile Court of Cherokee County's finding that her children are deprived. The mother essentially contends that the evidence was insufficient for the trial court to find her children deprived. Upon review, we affirm.

A child is deprived "who . . . [i]s without proper care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental, or emotional health or morals[.]" OCGA § 15-11-2 (8) (A). "[D]eprivation is established by proof of parental unfitness arising from 'either intentional or unintentional misconduct resulting in the abuse or neglect of the child or by what is tantamount to physical or mental incapability to care for the child.' [Cit.]" *In the Interest of J. P.*, 253 Ga. App. 732, 734-735 (560 SE2d 318) (2002). In reviewing a finding of deprivation,

> we review the evidence in the light most favorable to the juvenile court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived. This Court neither weighs evidence nor determines the credibility of witnesses; rather, we defer to the trial court's fact-finding and affirm unless the appellate standard is not met.

(Punctuation and footnote omitted.) *In the Interest of A. B.*, 267 Ga. App. 466, 466-467 (600 SE2d 409) (2004).

So viewed, the record reflects that the mother and the children's father were in the process of divorcing when the Cherokee County Department of Family and Children Services ("DFACS") became involved with the family.[1] The DFACS caseworker testified at the probable cause hearing that the mother contacted him on September 4, 2007 alleging that S. K. had been hit by the father's girlfriend during the child's visit with the father. He talked with the child, but it appeared that the child was "very happy" and she did not say "one way or the other" whether she had been hit. Three days later, the mother contacted the caseworker again, this time alleging that the

---

[1] The divorce was not final during the beginning of the investigation and was apparently finalized on September 25, 2007.

children had been sexually abused by the girlfriend's child, and that her husband attempted to poison her during their marriage. The children were interviewed at the Anna Crawford Center on September 12, 2007, and neither child disclosed sexual abuse. The caseworker testified that he observed the custody exchange between the parents on September 14, 2007, and it appeared that the parents were "jockeying to get the children to say things to me. . . . [T]he father is telling [S. K.] to say something. Mom is telling [S. K.] to say something and [S. K.] is pretty much torn where she exclaims that . . . she tries to tell the truth but mom always says that she's lying."

On September 17, 2007, the mother contacted the caseworker once again, this time to tell him that she had videotaped S. K. disclosing sexual abuse. He watched the videotape the following day, and found it "disturbing" in that "there [was] no way to . . . assess if . . . what [S. K.] is saying is true or not or if she's being provoked, being told what to say because one way or the other the mother is behind the camera so you don't know what's going on behind the camera." Apparently, on the videotape S. K. stated that "when she was sleeping something was poking her in her private and she looked up and it was [the girlfriend's son's] penis."

On September 19, 2007, the mother reported the alleged sexual abuse to the Fulton County Police Department and showed them the videotape, adding new allegations that A. K. had been abused as well. Apparently, she did not inform them of the DFACS investigation. Over the next few days S. K. underwent a second forensic interview at the Georgia Center, and a physical examination at Scottish Rite Hospital. The clinician from Fulton County who conducted the second interview contacted the Cherokee County DFACS caseworker after she was told that DFACS was involved in the case. Apparently, the clinician was not aware that the children had been forensically interviewed before, and she also told the caseworker that during the interview the mother would not

> accept the initial answer of the children, that she provokes the children and so that it's hard to get a straight answer. And that from multiple interviews . . . the answers aren't going to come in any clearer because the children are trying to find an answer that works so they won't be bothered anymore.

On September 28, 2007, the mother told the counselor at S. K.'s school that her daughter had been sexually abused, offered to play the videotape to her, and asked her to counsel the child about the abuse. That same day, the children were again medically evaluated at

Scottish Rite Child Protection Center.

On October 1, 2007, DFACS filed a deprivation complaint, and a subsequent order for shelter care was entered by the juvenile court on October 2 based on alleged sexual abuse by the father and emotional abuse by the mother. After the October 4, 2007 probable cause hearing and oral finding of probable cause of deprivation, the juvenile court entered an order on November 20, 2007, nunc pro tunc to October 4, finding that "probable cause exists to believe that the above children are deprived as defined in [OCGA § 15-11-2 (8) (A)] based upon the mother's failure to provide for the emotional and psychological needs of the children and unresolved mental issues." The juvenile court continued custody of the children with DFACS pending an adjudication hearing.

DFACS filed a deprivation petition on October 9, and following a hearing on the petition, the juvenile court found S. K. and A. K. deprived. The parties had stipulated to the evidence from the probable cause hearing. The court found that the mother had

> repeatedly subjected the children to unwarranted and un-
> necessary forensic interviews and invasive medical exams in
> an unrelenting effort to substantiate sexual abuse by her
> ex-husband and father of the children, thereby purposely
> causing the children emotional and psychological distress.

The court further noted that the claims were thoroughly investi-
gated and unsubstantiated. Despite this, and after being warned that repeated interviews regarding alleged sexual abuse could harm the children, the mother

> continued to pursue the matter. Even after three interviews
> and examinations by professionals which found no evidence
> of sexual abuse the mother continued to cause physical,
> mental, emotional, and moral harm to the children by
> videotaping yet another interview with [S. K.] during which
> the mother asked leading and suggestive questions despite
> the fact that the child was describing situations that were
> highly unlikely.

The DFACS caseworker testified at the deprivation hearing that upon further investigation he could find no evidence of the existence of the purported girlfriend's son who had allegedly sexually abused S. K.

"Evidence of a parent's repeated unfounded investigations of sexual abuse has been held to be an appropriate factor in a finding of deprivation." *In the Interest of J. S.*, 295 Ga. App. 861, 863 (673 SE2d

331) (2009), citing *In the Interest of M. E.*, 265 Ga. App. 412, 416-417 (1) (593 SE2d 924) (2004) (During a "twenty-month period the mother took the child to a hospital or a doctor's office in excess of ten times with allegations of sexual abuse against the father. Notwithstanding the mother's extensive efforts to convince authorities that the father had sexually abused the child, numerous doctors, a child protective service investigator, two sheriff's deputies, and two assistant district attorneys concluded that there was no evidence of sexual abuse."). Further, this court has recognized that the use of children in furtherance of efforts to frustrate or promote one's goals during divorces or separations may be egregious conduct sufficient to show that the children are deprived. *In the Interest of M. E.*, supra. Even in cases that might be deemed close, we are ever mindful that it is the children's welfare at issue in a deprivation case, and the primary factor in a determination of deprivation is the children's need, not the parents' circumstances. *In the Interest of R. M.*, 276 Ga. App. 707, 715 (624 SE2d 182) (2005).

Here, given the mother's continued allegations of sexual abuse, despite evidence showing otherwise, her subjecting the children, who were then four years old and six years old, to forensic and invasive physical examinations, her relentless interrogation of the children about alleged sexual abuse, and her refusal to cooperate with authorities regarding the welfare of the children, we cannot say that the evidence was insufficient to support the juvenile court's ruling of deprivation.

> We recognize the gravity of any intervention by the State into the parent-child relationship, and we do not lightly undertake our duty to examine the sufficiency of the evidence supporting a finding of deprivation. Nevertheless, this case turns largely on critical factual issues, including determining witness credibility, that can only be resolved by the factfinder who properly weighs the evidence and who has the benefit of observing live witness testimony. We are mindful of the appellate standard of review which confines us only to determining whether any rational trier of fact could have found by clear and convincing evidence that the child was deprived.

*In the Interest of J. S.*, supra, 295 Ga. App. at 864.

Thus, as there was clear and convincing evidence sufficient to authorize a rational trier of fact to find deprivation, the juvenile court here did not err in finding the children deprived.

*Judgment affirmed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED NOVEMBER 13, 2009.

*Flint, Connolly & Walker, John F. Connolly*, for appellant.
*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Virginia B. Fuller, Assistant Attorney General, Hope M. Pereira*, for appellee.